IN the INTEREST OF E.C., a child under
eighteen years of age: Harold A. BREIER, Police
Chief, City of Milwaukee, Appellant,

v.

E.C., Respondent. [Case No. 84–1937.]

IN the INTEREST OF J.W., a child under
eighteen years of age: City of MILWAUKEE
POLICE CHIEF, Appellant,

v.

J.W., Respondent. [Case No. 84–2257.]

IN the INTEREST OF D.P., a child under
eighteen years of age: City of MILWAUKEE
POLICE CHIEF, Appellant,

v.

D.P., Respondent. [Case No. 84–2258.]

Supreme Court

*Nos. 84–1937, 84–2257, 84–2258. Argued April 2, 1986.—Decided
May 16, 1986.*

(Also reported in 387 N.W.2d 72.)

For the appellant the cause was argued by *Scott G. Thomas,* assistant city attorney, with whom on the briefs was *Grant F. Langley,* city attorney.

For the respondents, E.C. and J.W., there was a brief and oral argument by *Donna L. Hintze,* assistant state public defender.

For the respondent, D.P., there was a brief by *Robert H. Blondis* and *Bangert & Blondis, S.C.,* Milwaukee, and oral argument by *Robert H. Blondis.*

STEINMETZ, J.   The issue in all three cases is whether a circuit court judge in Wisconsin has the inherent or equitable authority to order the expunction of juvenile police records when the delinquency petition resulting from the juvenile's arrest is subsequently dismissed. We conclude that circuit courts lack such authority to expunge police records.

This issue comes before us on certification from the court of appeals. The consolidated appeal derives from ancillary proceedings seeking the expunction of juvenile records, following the conclusion of juvenile delinquency actions.

In *In the Interest of E.C.,* E.C. moved the circuit court on January 18, 1984, for the following remedy:

"[A]n order expunging any and all records which were generated by the arrest of the above-named juvenile by Milwaukee County Police officers on or about June 14, 1983 and delinquency petition dated July 13, 1983, including without any limitation: records of this arrest and prosecution kept by the District Attorney's Office; records of this arrest and prosecution kept by the Milwaukee County Probation Department; computer records of this arrest and prosecution kept by the Children's Court Center; and all police reports and medical records including but not limited to fingerprints, photographs, and all police reports kept by the Milwaukee Police Department, such order extended to all record custodians who received reports from the Milwaukee Police Department."

On June 8, 1984, the circuit court orally ruled that it had the inherent authority to order that the records in question be expunged. A written order to this effect was filed July 16, 1984. The City of Milwaukee Police Chief has appealed from that order.

In the case of *In the Interest of J. W.,* J.W. filed a motion in the circuit court on April 26, 1984, requesting the same relief as E.C. On October 5, 1984, the circuit court entered a written order expunging the records. The City of Milwaukee Police Chief also has appealed from that order.

In the case of *In the Interest of D.P.,* D.P. filed a motion in the circuit court on June 1, 1984, also requesting the same relief as E.C. and J.W. On October 15, 1984, the circuit court entered an order expunging the records. The City of Milwaukee Police Chief also has appealed from that order.

In the case of *In the Interest of E.C.,* E.C. was taken into custody on June 14, 1983, for a burglary which occurred sometime between June 10, 1983, and June 13, 1983. E.C. was charged in a juvenile petition with burglary. On September 22, 1983, the assistant district attorney moved to dismiss the petition because the complainant stated he did not believe E.C. committed the burglary.

In the case of *In the Interest of J. W.,* J.W. was charged in a juvenile petition with reckless use of a weapon on February 10, 1984. This charge was later dismissed.

In the case of *In the Interest of D.P.,* a child in need of protection or service petition was issued on April 2, 1984, charging D.P. with second-degree sexual assault and battery. The sexual assault charge was later dismissed when D.P. pled guilty to the battery charge.

This appeal only questions the circuit courts' authority to order the expunction of juvenile records maintained by the Milwaukee Police Department. The Milwaukee Police Chief does not challenge the circuit courts' authority to regulate records maintained by the court.

Expunction, the act of expunging, as that term is used in this case means that the information regarding the charges against the juveniles would be placed in a sealed envelope which would be kept in a separate, private location and could not be viewed by anyone except on the order of a court. Also, the names of the juveniles would be deleted from police records that cannot be segregated. Expunction does not require the destruction of the juvenile records.

■

We consider three separate sources which might provide a basis for the circuit court's authority to expunge a juvenile's police record: (1) statutes, (2) inherent judicial authority, and (3) equitable judicial authority. The parties agree that no Wisconsin appellate decision has considered the issue raised in this case. The question of judicial authority is an issue of law which we may decide without deference to the circuit court. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984). We therefore consider *de novo* whether circuit courts may expunge juvenile police records. Our analysis begins with a consideration of the statutory basis for judicial control of juvenile police records.

Section 62.50(23), Stats.,[1] designates and charges the Chief of Police of the City of Milwaukee to "maintain and have custody of all property" of his department. This authority is over all books and records maintained by the police department.

Section 48.396(1), Stats.,[2] requires that records of children kept by peace officers, including the chief of police, be kept separate from records of persons 18 or older. These records are not open to public inspection and their contents cannot be disclosed except by order

---

[1] Section 62.50(23), Stats., provides as follows:

" (23) Duties of chief. The chief engineer of the fire department and the chief of police of a 1st class city, shall be the head of their respective departments. The chief of police shall preserve the public peace and enforce all laws and ordinances of the city. The chiefs shall be responsible for the efficiency and general good conduct of the department under their control. The board may review the efficiency and general good conduct of the departments. A chief shall act as an advisor to the board when the board reviews his or her department. The board may issue written directives to a chief based on a review of the chief's department. The chief receiving a directive shall implement the directive unless the directive is overruled in writing by the mayor. Each of the chiefs shall maintain and have custody of all property of their respective departments, including but not limited to, all books and records, which shall be available and subject to inspection by the board."

[2] Section 48.396(1), Stats., provides as follows:

"**48.396 Records.** (1) Peace officers' records of children shall be kept separate from records of persons 18 or older and shall not be open to inspection or their contents disclosed except by order of the court or according to s. 48.293. This subsection shall not apply to the representatives of newspapers or other reporters of news who wish to obtain information for the purpose of reporting news without revealing the identity of the child involved or to the confidential exchange of information between the police and officials of the school attended by the child or other law enforcement or social welfare agencies or to children 16 or older who are transferred to the criminal courts."

of the court or according to sec. 48.293. Section 48.293[3] declares that the separate records of juveniles shall be made available to counsel or guardian ad litems representing juveniles prior to a plea hearing.

The only exception in sec. 48.396(1), Stats., is that it does not apply to the representatives of newspapers or other reporters of news who wish to obtain information for the purpose of reporting the news. This exception is not unlimited in use and does not permit disclosure of a juvenile's identity. Section 48.396(1) also permits police departments to confidentially exchange information with other law enforcement agencies, social welfare agencies and the school attended by the juvenile.

---

[3] Section 48.293, Stats., provides as follows:

"**48.293 Discovery.** (1) Copies of all peace officer reports, including but not limited to the officer's memorandum and witnesses' statements, shall be made available upon request to counsel or guardian ad litem prior to a plea hearing. The reports shall be available through the representative of the public designated under s. 48.09. The child, through counsel or guardian ad litem, is the only party who shall have access to the reports in proceedings under ss. 48.12, 48.125 and 48.13(12). The identity of a confidential informant may be withheld pursuant to s. 905.10.

"(2) All records relating to a child which are relevant to the subject matter of a proceeding under this chapter shall be open to inspection by a guardian ad litem or counsel for any party, upon demand and upon presentation of releases where necessary, at least 48 hours before the proceeding. Persons entitled to inspect the records may obtain copies of the records with the permission of the custodian of the records or with permission of the court. The court may instruct counsel not to disclose specified items in the materials to the child or the parent if the court reasonably beleives that the disclosure would be harmful to the interestes of the child. Sections 971.23 to 971.25 shall be applicable in all delinquency proceedings under this chapter except the court shall establish the timetable for s. 971.23(3) and (8)."

■
The only legislative directive regarding the expunction of records is found in secs. 973.015(1) [4] and 165.84(1), Stats.,[5] neither of which applies to juvenile police records. In sec. 973.015(1), the legislature has determined that the only records which may be expunged are court records resulting from a misdemeanor conviction when the person was under the age of 21 at the

---

[4] Section 973.015(1), Stats., provides as follows:

"**973.015 Misdemeanors, special disposition.** (1) When a person under the age of 21 at the time of the commission of an offense for which the person has been found guilty in a court for violation of a law for which the maximum penalty is imprisonment for one year or less in the county jail, the court may order at the time of sentencing that the record be expunged upon successful completion of the sentence if the court determines the person will benefit and society will not be harmed by this disposition."

[5] Section 165.84(1), Stats., provides as follows:

"**165.84 Cooperation in criminal identification, records and statistics.** (1) All persons in charge of law enforcement agencies shall obtain, or cause to be obtained, the fingerprints in duplicate, according to the fingerprint system of identification established by the director of the F.B.I., full face, profile and full length photographs, and other available identifying data, of each person arrested or taken into custody for an offense of a type designated in s. 165.83(2)(a), of all persons arrested or taken into custody as fugitives from justice, and fingerprints in duplicate and other identifying data of all unidentified human corpses in their jurisdictions, but photographs need not be taken if it is known that photographs of the type listed, taken within the previous year, are on file at the division. Fingerprints and other identifying data of persons arrested or taken into custody for offenses other than those designated in s. 165.83(2)(a) may be taken at the discretion of the law enforcement agency concerned. Any person arrested or taken into custody and subsequently released without charge, or cleared of the offense through court proceedings, shall have any fingerprint record taken in connection therewith returned upon request."

time of the commission of the offense. In this situation, the court may expunge only the court records, and then, only if the court determines that the person will benefit and society will not be harmed by this disposition.

Section 165.84(1), Stats., authorizes the return of fingerprint records of an individual arrested or taken into custody and subsequently released without charge or cleared of the offense through court proceedings. The statute does not authorize the expunction of police records other than fingerprints.

We construe the relevant statutes to not provide express or implied authority for circuit courts to expunge juvenile police records. We are particularly influenced by the fact that sec. 48.396(1), Stats., specifically provides for confidentiality of police records, subject to court order, without allocating the authority to expunge such records. Also, sec. 973.015(1) only provides authority to expunge conviction records in limited circumstances.

■ We next consider whether the power to expunge juvenile police records is a necessary part of a circuit court's inherent power. The doctrine of inherent power derives from this state's separation of governmental power between three branches of government. In *State of Braunsdorf,* 98 Wis. 2d 569, 578–80, 297 N.W.2d 808 (1980), we stated:

> " 'This court has previously discussed the scope of the inherent powers of the courts of this state, but not directly in relation to the imposition of jury impaneling costs. In *State v. Cannon,* 196 Wis. 534, 536–37, 221 N.W. 603 (1928) this court summarized

the nature of the powers inherent to the courts as follows

" ' "In order that any human agency may accomplish its purposes, it is necessary that it possess power. The executive must have power to direct and control his business. The superintendent of the works must have power to direct his men. In order to accomplish the purposes for which they are created, courts must also possess powers. From time immemorial, certain powers have been conceded to courts because they are courts. Such powers have been conceded because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence. These powers are called inherent powers. In *In re Court Room,* 148 Wis. 109, 121, 134 N.W. 490, it was said:

" ' "The authorities, in so far as any can be found on the subject, are to the effect that a constitutional court of general jurisdiction has inherent power to protect itself against any action that would unreasonably curtail its powers or materially impair its efficiency. A county board has no power to even attempt to impede the functions of such a court, and no such power could be conferred upon it."

" ' "In *In re Bruen,* 102 Wash. 472, 172 Pac. 1152, the supreme court of Washington said:

" ' "The inherent power of the court is the power to protect itself; the power to administer justice whether any previous form of remedy had been granted or not; the power to promulgate rules for its practice; and the power to provide process where none exists. It is true that the judicial power of this court was created by the constitution, but upon coming into being under the constitution, this court came into being with inherent powers." '

386

" 'Since *State v. Cannon,* this court has made reference to the inherent powers of the courts in various contexts. In *In re Cannon,* 206 Wis. 374, 393, 240 N.W. 441 (1932), this court discussed the concept of the judiciary's inherent powers and the immunity of these powers from legislative abrogation. In *Latham v. Casey & King Corp., supra* at 314–15, this court stated:

" ' "It is considered well established that a court has the inherent power to resort to a dismissal of an action in the orderly administration of justice. *The general control of the judicial business before it is essential to the court if it is to function.* 'Every court has inherent power, exercisable in its sound discretion, consistent within the Constitution and statutes, to control disposition of causes on its docket with economy of time and effort.' 14 Am. Jur., Courts, p. 371, sec. 171, Inherent Powers of Courts, 1963 Supp., p. 77." (Emphasis supplied.)' "

We then concluded in *Braunsdorf* at 580 that "These cases teach that an inherent power is one without which a court cannot properly function." The issue in *Braunsdorf* was whether the power to dismiss a criminal case with prejudice prior to jeopardy on nonconstitutional grounds was essential to the existence or the orderly functioning of a circuit court. We concluded that such power was not an institutional necessity of the judiciary. *Id.* at 585.

Similarly, we conclude that authority to expunge juvenile police records, which are in the statutory control and under the authority of the City of Milwaukee Police Chief, is not essential to the existence or the orderly functioning of a circuit court, nor is it necessary to maintain the circuit court's dignity, transact its business or accomplish the purpose of its existence. The

maintenance of such records by the police department, in confidentiality, as statutorily required, does not affect the administration or performance of a circuit court's constitutional and statutory duties.

■

The juveniles in this case also argue that circuit courts have equitable authority to expunge police records. The issue of equitable authority is a variant of the inherent authority doctrine. It permits a court to grant equitable remedies to private litigants in situations in which there is no explicit statutory authority or in which the available legal remedy is inadequate to do complete justice. The juveniles rely on this court's decision in *State v. Excel Management Services,* 111 Wis. 2d 479, 490, 331 N.W.2d 312 (1983), wherein we stated that once the equitable jurisdiction of a court is invoked:

> " '[T]he comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.' " Quoting *Porter v. Warner Co.,* 328 U.S. 395, 398 (1946).

The court concluded in *Excel Management* that because the relevant statutes in that case contained no limitation on the trial court's exercise of equity jurisdiction, "the trial court has the full scope of equitable remedies available to it to fashion relief for the parties injured as the result of the acts and practices involved in this case." *Id.*

We agree that a circuit court in Wisconsin has authority to grant equitable relief, even in the absence

of a statutory right. The relief that a court grants, however, must be in response to the invasion of legally protected rights. *See* art. I, sec. 9 of the Wisconsin Constitution which provides that there shall be a remedy for every wrong; *In Interest of D.H.,* 76 Wis. 2d 286, 294, 251 N.W.2d 196 (1977). The exercise of equitable authority, therefore, may provide complete justice only where there is a wrong. Any other construction of a circuit court's equitable authority would mean that an action could never be dismissed for failure to state a claim upon which relief can be granted. *See* sec. 802.06(2), Stats. Obviously, not every perceived injustice is actionable. This court therefore must find that the maintenance by police of juvenile arrest records violates a recognized right before we can sanction expunction as an appropriate equitable remedy.

We conclude that maintenance of juvenile arrest records by police does not violate any recognized rights of the juveniles. The juveniles do not allege that maintenance of the records violates constitutional or statutory privacy rights. *See* sec. 895.50, Stats. In addition, although the juveniles claim the records are stigmatizing, there is no claimed due process violation. We conclude that the alleged stigma from such records does not violate due process or any other right because there was no claimed wrongdoing by the police in generating the arrest records and because there was no public dissemination of the records. The juveniles also were provided hearing rights by which to dispute the charges, thereby providing due process. *See Hammons v. Scott,* 423 F. Supp. 618 (N.D. Cal. 1976), holding that maintenance of juvenile arrest records after the dismissal of charges does not state a claim upon which relief can be granted. Maintenance of the arrest records, there-

fore, does not violate any alleged rights of the juveniles, and we are unpersuaded of any justification for creating a new cause of action.

Another argument made in favor of a circuit court's authority to expunge juvenile arrest records contends that such authority is implied from the Children's Code. The argument derives from the fact that courts are directed to exercise their discretion in the best interest of the child in juvenile matters. The Children's Code, however, does not confer unfettered discretion to craft unique and unspecified remedies in juvenile matters. The code authorizes courts to choose between specified dispositions, while basing their decisions on the best interest of the child. Expunction of juvenile police records is not specified as an available disposition in juvenile proceedings. Thus, expunction of arrest records is not a provision under the code to which the best interest of the child standard can statutorily apply.

We also do not construe sec. 48.396(1), Stats., to impliedly confer equitable authority to expunge juvenile police records. That statute requires juvenile police records to be kept confidential. In *State ex rel. Herget v. Waukesha Co., Cir. Ct.,* 84 Wis. 2d 435, 451, 267 N.W.2d 309 (1978), we discussed the importance of confidentiality of juvenile police records as facilitating rehabilitation and reducing stigma. Confidentiality, however, is not equivalent to expunction. In fact, confidentiality requires that the records be maintained and used for defined purposes. If we construed sec. 48.396(1) to authorize expunction, we would be constru-

ing the statute contrary to its plain and unambiguous language.

Finally, we are unpersuaded that police departments have no justifiable interest in maintaining juvenile arrest records when charges subsequently are dismissed. This argument presupposes that the police may not maintain records except in cases when a conviction or delinquency adjudication follows arrest. Other courts, however, have refused to recognize judicial authority to expunge arrest records because police departments do have legitimate reasons for maintaining such records. For example, in *Monroe v. Tielsch*, 84 Wash. 2d 217, 525 P.2d 250, 252 (1974), the Washington Supreme Court ruled that the trial court correctly denied the juvenile's motions to expunge his arrest records. The court noted that law enforcement agencies have a legitimate interest in juvenile arrest records. *Id.* at 219. The court stated: "Thus in dealing with juveniles who are frequently as mobile as any other part of our society, law enforcement officials should have the assistance of the past involvement of the juvenile with offenses as reflected by arrests. *Id.* at 220.

In *Loder v. Municipal Court for San Diego Jud. Dist.*, 17 Cal. 3d 859, 553 P.2d 624, 132 Cal. Rptr. 464 (1976), the California Supreme Court discussed the importance of these records. That court noted that in the initial stages of investigation; arrest records are important when an officer must determine whether or not the potential arrestee is wanted on any other charges or is a fugitive, or whether he presents a threat to the officer's safety. The information derived from the arrest may also be used by the police in several ways for the important purpose of investigating and solving

similar crimes in the future. An arrest record may under appropriate conditions be a valuable investigative tool for the discovery of further evidence.

The Massachusetts Supreme Court also discussed the importance of juvenile records, in *Police Comm'r of Boston v. Municipal Court of the Dorchester District*, 374 Mass. 640, 655, 374 N.E.2d 272, 281 (Mass. 1978). That court noted:

> "It has been said that juvenile arrest records are necessary to know an offender's previous antisocial behavior to determine appropriate dispositions and that their maintenance provides a source of information about persons and conditions which may threaten the public welfare. . . . Statistical experience tells [police] that persons with arrest records commit a higher percentage of crimes than persons who do not have arrest records."

The value of police arrest records, therefore, is not uniformly denied, as suggested by these juveniles. In this situation, it would be presumptuous and dangerous for this court to gratuitously instruct police departments how to fulfill their police mission. The judicial limitation on the state's police function is to guard against statutory, common law and constitutional violation of individual rights. We are unconvinced that the maintenance of juvenile arrest records in confidentiality violates any legally recognizable rights of these juveniles. Because there is no violation of rights, and because there is no statutory, inherent or equitable authority to expunge police arrest records, we reverse the orders expunging these juvenile police records.

*By the Court.*—The orders of the circuit courts for Milwaukee county are reversed.

SHIRLEY S. ABRAHAMSON, J. *(concurring)*. Given the potentially discriminatory effect of arrest records, I would hope that the legislature would empower circuit courts to seal juvenile records when the circuit court has dismissed the charges upon the state's motion and the juvenile makes a showing of good cause. A sealing of the record, that is, an expungement, is appropriate when the dangers of unwarranted adverse consequences to the individual outweigh the public interest in maintaining the record. The legislature has provided for expungement of misdemeanor records of persons under the age of 21 for good cause, sec. 973.015, Stats. 1983–84, and has provided that fingerprint arrest records of persons cleared of a charge be returned on request. Section 165.84(1), Stats. 1983–84. Similar protections may be appropriate in some juvenile cases in which the circuit court dismisses the charges on the state's motion.

Although sec. 48.396(1), Stats., 1983–84, provides for some confidentiality of juvenile records, its protection is inadequate. As this court noted in *Winburn v. State*, 32 Wis. 2d 152, 162, 145 N.W.2d 178 (1966), juvenile records are not confidential as a matter of practice:

> "It is common knowledge also that juvenile records do not, in fact, have a confidential status. Peace officers' records may be communicated to school authorities and to other law-enforcement agencies. The federal bureau of investigation has no difficulty in ascertaining whether an individual has a juvenile record. A juvenile record may be a substantial handicap to one who seeks employment with the United States government. The confidentiality of records, even if kept inviolate, is no real safeguard to the ex-delinquent for, if asked whether he was

ever so adjudged, he will be morally obliged to admit it whether or not that status was adjudicated by due process and fair play."

The majority explains that in some instances juvenile arrest records provide police with valuable information and enable them to determine whether an arrestee is wanted on any other charges, is a fugitive, or poses a threat to safety. In addition, such information may help police to investigate and solve similar crimes. Although juvenile arrest records may be of value under some circumstances, they are not of value in all cases. The circuit court should have the power to make this determination on a case-by-case basis.