IN the MATTER OF the CONDEMNATION by the City of Superior, Douglas County, Wisconsin, OF PROPERTY OWNED BY Dame Mildred Q. BRONFMAN, Bernard Lande, and her husband, Thirty-Six Developments (Canada) Ltd., Berland Holdings, Inc., The Equitable Life Assurance Society of The United States, National Super Markets Inc., Gateway Foods, Inc., and Miners Incorporated: Dame Mildred Q. BRONFMAN, Bernard Lande, her husband, Thirty-Six Developments (Canada) Ltd., and Berland Holdings, Inc., Appellants,

v.

DOUGLAS COUNTY, Respondent.

Court of Appeals

*No. 91-0375. Submitted on briefs August 12, 1991.—Decided September 24, 1991.*

(Also reported in 476 N.W.2d 611.)

On behalf of appellants, the cause was submitted on the brief of *Gaylord W. Swelbar* of *Hanft, Fride, O'Brien, Harries, Swelbar & Burns, P.A.* of Duluth, Minnesota.

On behalf of respondent, the cause was submitted on the brief of *Frederic P. Felker,* Douglas County corporation counsel, of Superior.

Before Cane, P.J., LaRocque and Myse, JJ.

LAROCQUE, J.   The owners of a condemnation award deposited with the clerk of circuit court by the condemnor pending the owners' appeal challenge a judgment upholding the payment of the accumulated interest on the funds to the Douglas County general fund pursuant to sec. 59.42(2), Stats. The owners argue that the statute does not apply to interest on money tendered into court for the benefit of the parties in civil litigation, and also that the county's retention of the interest constitutes a taking of their property without just compensation in violation of the state and federal constitutions. We affirm the judgment.

The city of Superior exercised its powers of eminent domain and condemned the owners' private property for a public use pursuant to ch. 32, Stats. After the condemnation commissioners set the amount of just compensation for the taking at approximately $1.5 million, the city tendered that amount to the owners by depositing the funds with the clerk of court pursuant to sec. 32.06(8), Stats. The owners declined the award and appealed, but later withdrew the appeal and accepted the funds. Between the end of May 1990 when the funds were deposited and mid-October 1990 when the appeal was withdrawn, the deposited funds earned between $40,000 and $50,000 interest. The principal award was paid to the owners, but the clerk paid the accumulated interest to the county general fund pursuant to sec. 59.42, Stats. The court denied the owners' motion to compel payment of the interest to them, and the owners appeal.

The statute provides:

> **59.42 Clerk of Court; fees; investment of funds.** (1) The clerk of the circuit court shall collect the fees prescribed in ss. 814.60 to 814.63. The clerk may refuse to accept any paper for filing or recording until the fee prescribed in subch. II of ch. 814 or any applicable statute is paid.
>
> (2) Except as provided in sub. (3), the clerk may invest any funds paid into his or her office and which are being held for repayment. The investments shall be made in suitably protected accounts in the manner specified in s. 66.04(2) and all income that may accrue shall be paid into the county general fund.
>
> (3) A judge may direct that sub. (2) does not apply to certain funds paid into the office. The judge's authority applies only to funds relating to cases before his or her court.

The cardinal rule in all statutory interpretation is to discern the intent of the legislature. *Scott v. First State Ins. Co.* 155 Wis. 2d 608, 612, 456 N.W.2d 152, 154 (1990). Whether a statute is ambiguous is a question of law. *In re Berth,* 157 Wis. 2d 717, 721, 460 N.W.2d 436, 438 (Ct. App. 1990). A statute is ambiguous if it is capable of being construed in two different ways by reasonably informed persons. *State v. Mason,* 132 Wis. 2d 427, 432, 393 N.W.2d 102, 104 (Ct. App. 1986). A statute may be rendered ambiguous by the interaction of the words and structure of the statute itself. *State ex rel. Newspapers, Inc. v. Showers,* 135 Wis. 2d 77, 87, 398 N.W.2d 154, 159 (1987). Where the statute is ambiguous, the court looks to the legislative history, context, subject matter and object of the statute to ascertain the legislative intent. *State v. Pham,* 137 Wis. 2d 31, 34, 403 N.W.2d 35, 36 (1987).

The county reads the reference in subsec. (2) of sec. 59.42, Stats., to "any funds" as unambiguous and thus to include the monies here. The owners argue that the reference to funds must be read in context of subsec. (1) of the same statute that directs the clerk to collect various filing fees for actions maintained in the circuit court. The owners suggest that the investment of funds referred to in subsec. (2) means investment only of the fees collected pursuant to sec. 814.60 to 814.63, Stats. Assuming without deciding that the owners have presented an alternative reasonable way to read the statute, the statutory history still supports the county's position.

The Legislative Reference Bureau (LRB) records show that the request for a statute to authorize investments by the clerk of the circuit court came from Mil-

waukee County and dealt specifically with condemnation awards paid into court. The request included an opinion from the Milwaukee County Corporation Counsel, Robert P. Russell, which provided in pertinent part:

> Under the existing law money paid to the clerk of the circuit court as damages for the taking of property in condemnation proceedings is paid to the clerk for the benefit of the property owner. The refusal of the property owner to accept the amount tendered as damages does not change the fact that the money actually belongs to him and the clerk is simply holding the funds as trustee. While the existing law does not require that the clerk invest such money, if it is invested, the interest thereon belongs to the property owner. This would be true regardless of the manner of investment, whether by the clerk directly or indirectly through the county treasurer.
>
> We assume that the purpose of the recommendation . . . is to change the existing law not only with respect to monies deposited as damages in condemnation proceedings, but also to cover other monies which might be deposited with the clerk of the circuit court. Without passing upon the merits of such legislation, it would be our opinion that the legislature could properly authorize the clerk of the circuit court, with certain exceptions, such as monies representing the proceeds of minor settlements, to deposit monies received by him . . . where it would be mingled with other funds of the county . . . and with the county retaining the interest earned on such funds. Accordingly, we find no legal obstacle to the adoption of the proposed resolution.

The original investment statute, sec. 59.42(14), ch. 43, Laws of 1969, covered funds "not specifically identifiable to any account." Arguably, despite the purpose of Milwaukee's request for legislation, a condemnation

award is "specifically identifiable" and therefore would be outside the statutory authority to pay the interest to the county. Whatever the limitations of the original statute, any question of the statute's application to the funds at issue here were put to rest by an amendment in 1979 that broadened the clerk's authority to permit investment of "any funds." The LRB analysis of the 1979 amendment provides: "This proposal specifies that the investment provisions relate to *all funds* paid into the clerk's office, but that a judge may direct that the investment provisions do not apply to certain funds . . .." (Emphasis added.) The legislature's fiscal estimate attached to the bill provides:

> The bill extends the permissive authority of a clerk of court to invest any funds paid to the clerk's office unless a judge specifies otherwise for funds relating to cases before the judge's court. The bill would increase the potential funds available and therefore increase the investment income derived from clerk of courts accounts. The bill would . . . potentially result in increased revenues for counties.
>
> The exact fiscal effect of this bill, however, is not possible to determine because of the following unknowns: . . .
>
> . . ..
>
> 4.   The frequency with which a judge would exercise his or her individual discretion relating to investment of funds for cases before his or her court.

There remains no question that the statute means what it says, that "any funds" can be invested, and thus interest on condemnation awards in the hands of the clerk of court is paid to the county general fund.

The owners also attack the county's claim on constitutional grounds. In order to successfully attack a legislative enactment as unconstitutional, it is insufficient merely to establish doubt as to the act's constitutionality or to establish that an act is probably unconstitutional; the party attacking the statute has the burden of proving its unconstitutionality beyond a reasonable doubt. *Quinn v. Town of Dodgeville,* 122 Wis. 2d 570, 577, 364 N.W.2d 149, 154 (1985).

Article I, sec. 13, of the Wisconsin Constitution states that "[t]he property of no person shall be taken for public use without just compensation therefor." The fifth amendment to the United States Constitution made applicable to the states through the fourteenth amendment provides: "nor shall private property be taken for public use without just compensation."

The owners rely upon *Webb's Fabulous Pharmacies v. Beckwith,* 449 U.S. 155 (1980), declaring a Florida statute that permitted the county to appropriate the interest earned on private funds deposited in court violative of the fifth and fourteenth amendments. In that instance, the purchaser of the assets of a corporation sought court protection under the Florida Bulk Transfers Act because the corporation debts appeared to be greater than the purchase price. Pending a decision on disposition of the funds, the court directed the clerk to deposit the purchase money in an interest bearing account. The Florida statutes deemed all interest accruing from monies deposited with the clerk to belong to the county. A separate statute required the clerk to charge a specified fee for "services rendered" on all money deposited in the office, the fee to be computed as a percentage of the amount deposited. Pursuant to the fee statute, the clerk collected approximately $9,000. The interest on the

invested principal also earned approximately $100,000. The receiver for the insolvent corporation moved the trial court to order payment to him of both the deposited principal sum, less the service fee, as well as the accumulated interest. The trial court awarded the interest to the county pursuant to the statute. The Florida Supreme Court upheld that decision on grounds that the money assumes the temporary status of "public money" when it is deposited.

The *Webb* decision reversed the Florida court and held the practice to be an unconstitutional taking without just compensation. While acknowledging that the court "has been permissive in upholding government action that may deny the property owner of some beneficial use of his property or that may restrict the owner's full exploitation of the property, if such public action is justified as promoting the general welfare," *id.* at 163, it rejected the statute because the government "has not merely adjust[ed] the benefits and burdens of economic life to promote the common good." *Id.* (quoting *Central Trans. Co. v. New York City,* 438 U.S. 104, 124 (1978)). Rather, the exaction is a forced contribution to general governmental revenues, and it is not reasonably related to the costs of using the courts. "Indeed, '[t]he Fifth Amendment's guarantee . . . was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Id.* (quoting *Armstrong v. United States,* 364 U.S. 40, 49 (1960)).

*Webb*'s ultimate holding is this:

> We hold that under the narrow circumstances of this case—where there is a separate and distinct state statute authorizing a clerk's fee "for services rendered" based upon the amount of principal deposited; where the deposited fund itself concededly is private;

726

and where the deposit in the court's registry is required by state statute in order for the depositor to avail itself of statutory protection from claims of creditors and others—[the] County's taking unto itself, [by statute], the interest earned on the interpleader fund while it was in the registry of the court was a taking violative of the Fifth and Fourteenth Amendments. *We express no view as to the constitutionality of a statute that prescribes a county's retention of interest earned, where the interest would be the only return to the county for services it renders.*

*Id.* at 164-65 (emphasis added).

■

We conclude that *Webb* is not controlling and that sec. 59.42(2), Stats., is not unconstitutional. Unlike the Florida scheme, Wisconsin does not provide both a service fee and retention of the interest.[1] Even more significant, however, are the provisions of ch. 32, Stats., deal-

---

[1]As Douglas County notes, there is a separate statute dealing with the placement of funds held by the court in a safe depository. Section 757.25, Stats., provides:

> Money in court, how deposited. The judge of any court of record on the application of a party to any action or proceeding therein who has paid $1,000 or more into court in the action or proceeding may order the money to be deposited in a safe depository until the further order of the court or judge thereof. After the money has been so deposited it shall be withdrawn only upon a check signed by the clerk of the court pursuant to whose order the deposit was made and upon an order made by the court or the judge thereof. The fee for the clerk's services for depositing and disbursing the money is prescribed in s. 814.61(12)(a).

The owners did not invoke this statute, but, assuming placement in a safe depository allows for investment of the funds, this statute presents yet another option to the owners to avoid losing the interest to the county.

ing with owners' rights to withdraw the funds from the court. Section 32.06(11) provides:

Withdrawal of compensation paid into court; bond. If either party appeals from the award of the commission, the owner shall not be entitled to receive the amount of compensation paid into court by condemnor unless the owner files with the clerk of the court a surety bond executed by a licensed corporate surety company in an amount equal to one-half of the commission's award, conditioned to pay to the condemnor, any sums together with interest and costs as allowed by the court, by which the award of the commission may be diminished.

Thus, unlike the circumstances in *Webb* where the owners of the funds were required to maintain the deposit for their own protection, the owners here had the right to withdraw their funds and invest them as they saw fit. The owners' response to this statutory provision is a statement in their brief that the "decision to not withdraw those funds was based in part on the cost and difficulty of obtaining a surety bond, which would have cost . . . approximately $8,000." As Douglas County notes, this claim of difficulty and expense is nothing but an "unsubstantiated assertion by . . . counsel."[2] Assertions of fact that are not part of the record will not be considered on appeal. *Jenkins v. Sabourin,* 104 Wis. 2d 309, 313, 311 N.W.2d 600, 603 (1981). Furthermore, even

[2]The owners also argue that the decision not to withdraw the funds was based upon "assurance from the Clerk of Court that the funds had been placed in interest bearing accounts." The county points out that this allegation does not appear in the record nor is there any such finding by the trial court. Further, even if the assurance were given, there is no indication that the clerk advised the owners that he argued that the interest would belong to them.

if the cost of the bond were established, that expense does not render the collection of interest an unconstitutional taking.

As *Webb* indicated, the supreme court has been permissive in upholding government action that denies property owners the use of property where it is justified as promoting the general welfare. *Id.* at 163. The requirement that the owner post a bond to assure government recoupment of the award should it be reduced on appeal is within this authority. We therefore conclude that sec. 59.42(2), Stats., is not unconstitutional.

*By the Court.*—Judgment affirmed.