In re City of Glendale Community Development
Authority Condemnation Award, Parcel 14:

HSBC Realty Credit Corporation, Petitioner,

v.

City of Glendale, Respondent,

John Barrett, Intervenor-Appellant,

Bayshore Town Center, LLC,
Interested Person-Respondent,†

Alterra Coffee Roasters, Athletes Foot of
Glendale, Abercrombie & Fitch Stores, Inc.,
Barnes & Noble, Blockbuster Entertainment,
Regis Corporation, GNC Store #2956, Gymboree
Retail #433, Luxottica Retail Group, Touchdown,
Inc., d/b/a Pro Image, Mutual Savings Bank,
Tumbleweed/Diamondback Management,
Nautilus, Voicestream PCS II, North Shore Bank,
Walgreen Company #647 and Sears Roebuck &
Company, Interested Persons.

Court of Appeals

*No. 2005AP1042. Submitted on briefs April 6, 2006.
—Decided July 5, 2006.*

2006 WI App 160

(Also reported in 721 N.W.2d 489.)

† Petition to review granted 9/12/06.

On behalf of the intervenor-appellant, the cause was submitted on the briefs of *Mark A. Grady*, principal assistant corporation counsel and *William J. Domina*, corporation counsel, Milwaukee.

On behalf of the interested person-respondent, the cause was submitted on the brief of *Daniel Kelly* of *Reinhart Boerner Van Deuren S.C.*, Milwaukee.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. John Barrett, Milwaukee County Clerk of Circuit Court (hereafter, the "Clerk") appeals from a trial court order directing him to transfer a condemnation award (the "Award") to a money market account at a private bank where it will earn interest for the benefit of the interested persons having a claim on the Award. The Clerk argues that the trial court lacked authority to order that the Award be transferred from his control and deprive Milwaukee County's general fund of the interest it could earn on the Award. In the alternative, the Clerk argues that if the trial court had authority to order the transfer, the Clerk is entitled to payment of a transfer fee pursuant to Wis. Stat. § 814.61(12)(a) (2003–04).[1]

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 2. We conclude that the trial court lacked authority to order that the Award be transferred from the Clerk's control and placed in a money market account with interest accruing to the benefit of the interested persons having a claim on the Award. Therefore, we reverse the trial court's order and remand for further proceedings consistent with this opinion. Because we conclude the Award may not be transferred to a private account, we do not consider the Clerk's alternative argument concerning the payment of a transfer fee.

## BACKGROUND

¶ 3. As part of a substantial redevelopment project of the Bayshore Mall, the City of Glendale Community Development Authority (the "CDA") condemned a parcel of commercial real estate that contained a number of existing businesses. On December 10, 2004, consistent with WIS. STAT. § 32.05(7)(d),[2] the

---

[2] WISCONSIN STAT. § 32.05(7) provides in relevant part:

AWARD OF COMPENSATION. If the owner has not accepted the jurisdictional offer within the periods limited in sub. (6) or fails to consummate an acceptance as provided therein, the condemnor may make an award of damages in the manner and sequence of acts as follows:

. . . .

(d) On or before said date of taking, a check, naming the parties in interest as payees, for the amount of the award less outstanding delinquent tax liens . . . and less prorated taxes of the same year, if any . . . shall at the option of the condemnor be mailed by certified mail to the owner or one of the owners of record *or be deposited with the clerk of the circuit court of the county for the benefit of the persons named in the award.* The clerk shall give notice thereof by certified mail to such parties. The persons entitled thereto may receive their proper share of the award by petition to and order of the circuit court of the county. The petition shall be filed with the clerk of the court without fee.

(Emphasis supplied.)

CDA deposited with the Clerk the condemnation Award totaling $14,439,294.84,[3] and gave requisite notice to interested persons. The amount of the Award and how it was to be apportioned among various businesses were issues in dispute, but these issues are not the subject of this appeal.

¶ 4. The Clerk exercised his authority under WIS. STAT. § 59.40(3)(b) to deposit the Award in the County's general fund, which was earning interest at the rate of two percent annually. Consistent with § 59.40(3)(b), the County is allowed to earn and retain that interest, which in this case was a significant sum, given that the deposited Award was over fourteen million dollars.

¶ 5. On January 6, 2005, Bayshore Town Center, LLC ("Bayshore"), one of the interested entities, moved the trial court for an order directing the Clerk to transfer the Award into a private money market account for the benefit of those who will ultimately share the Award. Bayshore estimated the ultimate recipients would earn $400 to $800 per day in interest. Bayshore also sought an order prohibiting the Clerk from collecting a WIS. STAT. § 814.61(12)(a) fee for transferring the Award to a private bank.

¶ 6. The Clerk promptly moved to intervene to oppose the motion to transfer the Award. The motion to intervene was granted.

¶ 7. The trial court granted Bayshore's motion and ordered that the Award be transferred from the Clerk's control into a money market account with U.S.

---

[3] This amount represents the Award of Compensation, $14,755,000, minus prorated 2004 real estate taxes.

Bank,[4] without any fee to the Clerk that might be payable under WIS. STAT. § 814.61(12)(a). This appeal followed.

## DISCUSSION

¶ 8. At issue is whether the trial court had authority to order the Clerk to transfer the Award to a private money market account for the benefit of the interested persons having a claim on the Award.[5] The Clerk argues that he is entitled to invest and earn interest on the deposited Award pursuant to WIS. STAT. § 59.40(3),[6] which provides:

CLERK OF COURT; FEES; INVESTMENT OF FUNDS. (a) The clerk of the circuit court shall collect the fees that are prescribed in ss. 814.60 to 814.63. The clerk may refuse to accept any paper for filing or recording until the fee prescribed in subch. II of ch. 814 or any applicable statute is paid.

(b) Except as provided in par. (c), the clerk may invest any funds that are paid into his or her office and

---

[4] The trial court order stated that Bayshore would inform the Clerk of the particular bank branch where the funds should be deposited.

[5] Bayshore correctly notes that the Clerk challenges only the trial court's authority to transfer the Award, not its exercise of discretion in doing so. Because we conclude that the trial court lacked authority to order the transfer, there is no need to consider the trial court's exercise of discretion.

[6] The language in WIS. STAT. § 59.40(3)(b) and (c) that is at issue in this case is identical to language created in 1979, *see* WIS. STAT. § 59.42(14) (1979), except that the statute has undergone renumbering, and the statute referenced within § 59.40(3)(b) is WIS. STAT. § 66.0603(1m), rather than WIS. STAT. § 66.04(2) (1979), which was referenced in § 59.42(14) (1979).

are being held for repayment. The investments shall be made in suitably protected accounts in the manner specified in s. 66.0603 (1m) and all income that may accrue shall be paid into the county general fund.

(c) A judge may direct that par. (b) does not apply to certain funds paid into the office. The judge's authority applies only to funds relating to cases before his or her court.

¶ 9. One of the provisions at issue here, Wis. Stat. § 59.40(3)(b), was previously interpreted in *Bronfman v. Douglas County*, 164 Wis. 2d 718, 476 N.W.2d 611 (Ct. App. 1991) (interpreting Wis. Stat. § 59.42(2) (1989–90), now renumbered as § 59.40(3)(b)). In *Bronfman*, a condemnor deposited the condemnation award with the clerk of court pending the owners' appeal of the award. *Id.*, 164 Wis. 2d at 720. The property owners argued that § 59.42(2) (1989–90) did not apply to interest on money paid into the court for the benefit of the parties in civil litigation, and that the county's retention of the interest on the condemnation award constituted a taking without just compensation. *Id.* We concluded that § 59.42(2) (1989–90) applied to the deposited award, and that the county's retention of the interest was not a taking. *Id.* at 721–29. Here, the Clerk relies on *Bronfman* in support of his assertion that Milwaukee County is entitled to retain the interest earned on the Award.[7]

---

[7] Bayshore suggests that *Bronfman v. Douglas County*, 164 Wis. 2d 718, 476 N.W.2d 611 (Ct. App. 1991), is distinguishable because the property owner sought interest retroactively, rather than asking the trial court to award interest while the condemnation award was being litigated. While this is one basis to distinguish the case, *Bronfman*'s holding that Wis. Stat. § 59.42(2) (1989–90) (now Wis. Stat. § 59.40(3)(b)) allows the

500

¶ 10. Bayshore contends that the trial court was empowered to order that the Award be transferred to a private account for the benefit of the interested persons because the trial court has inherent and equitable authority to administer and preserve the Award. Bayshore also argues that the legislature has not withdrawn that authority, and that Wis. Stat. § 59.40(3)(c) is a preservation of the trial court's authority. We begin our discussion by addressing Bayshore's inherent and equitable authority argument.

## A. Inherent and equitable authority

¶ 11. Bayshore argues at length that the trial court had inherent and equitable authority to order that the Award be transferred from the Clerk's control and placed in a money market account with interest accruing to the benefit of the interested persons having a claim on the Award. It contends that the trial court does not need an express grant of authority, and that no statute has limited the trial court's inherent and equitable power to enter such an order.

¶ 12. In response, the Clerk argues that trial courts only have inherent authority to protect established rights, and that the potential Award recipients do not have a right to earn interest on the deposited Award. The Clerk cites *Br e ier v. E.C.*, 130 Wis. 2d 376, 387 N.W.2d 72 (1986), which stated: "The issue of equitable authority is a variant of the inherent authority doctrine. It permits a court to grant equitable remedies to private litigants in situations in which there is no explicit statutory authority or in which the

clerk to invest "any funds held for repayment" paid into the clerk's office, including condemnation awards deposited with the clerk, is applicable here. *See Bronfman*, 164 Wis. 2d at 721–24.

501

available legal remedy is inadequate to do complete justice." *Id.* at 388. The Clerk contends that because there is explicit statutory language addressing both interested persons' rights to awards and a clerk's authority to invest awards and retain the interest for the county, the trial court lacked inherent and equitable authority in this case to order the Clerk to transfer the Award.

¶ 13. We conclude that the trial court lacked inherent or equitable authority to order the Award transferred from the Clerk's office to a private money market account. "[A] court's exercise of equitable authority is only appropriate when a legally protected right has been invaded. Additionally, a court may not exercise its equitable authority if such exercise would ignore a statutory mandate." *GMAC Mortgage Corp. v. Gisvold*, 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998) (citation omitted). We agree with the Clerk that the Award recipients have not established any right to earn interest on the Award. WISCONSIN STAT. § 59.40(3)(b) specifically directs that interest earned on a deposited award shall accrue to the benefit of the county's general fund. Recognizing inherent authority to redirect an award elsewhere would "ignore [the] statutory mandate" of § 59.40(3)(b). *See Gisvold*, 215 Wis. 2d at 480.

¶ 14. In addition, we note that "an inherent power is one without which a court cannot properly function." *State v. Braunsdorf*, 98 Wis. 2d 569, 580, 297 N.W.2d 808 (1980) (citing *State v. Cannon*, 196 Wis. 534, 536, 221 N.W. 603 (1928)). *Cannon* explained:

> From time immemorial, certain powers have been conceded to courts because they are courts. Such powers have been conceded because without them they

could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence. These powers are called inherent powers.

*Id.*, 196 Wis. at 536. Investment of a condemnation award for the benefit of the condemnee is not a power without which a court cannot properly function. For these reasons, we reject Bayshore's argument.

## B. Statutory authority

¶ 15. The second potential basis to affirm the trial court's order is statutory authority—the basis upon which the trial court relied in making its decision. It is undisputed that WIS. STAT. § 59.40(3)(b) gives clerks the authority to invest awards and directs that the accrued income shall be paid into the county's general fund. *See id.* At issue is the meaning of § 59.40(3)(c), which appears to limit § 59.40(3)(b). This presents an issue of statutory interpretation, which we review *de novo. State v. Waushara County Bd. of Adjustment*, 2004 WI 56, ¶ 14, 271 Wis. 2d 547, 679 N.W.2d 514.

¶ 16. "In construing a statute, our goal is to ascertain the intent of the legislature." *Grinnell Mut. Reinsurance Co. v. State Farm Mut. Auto. Ins. Co.*, 2004 WI App 32, 9, 269 Wis. 2d 873, 676 N.W.2d 573. "We begin with the language of the statute and if it clearly sets forth the legislature's intent, we apply that language to the facts." *Id.* Except where specially defined words or technical phases are used, "[s]tatutory language is given its common, ordinary, and accepted meaning." *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If "statutory language is ambiguous—that is, capable of being under-

stood by reasonably well-informed persons in two or more senses—then we may employ sources extrinsic to the statutory text. These extrinsic sources are typically items of legislative history." *Commissioner of Ins. v. Fiber Recovery, Inc.*, 2004 WI App 183, 16, 276 Wis. 2d 495, 687 N.W.2d 755.

¶ 17. As noted earlier, WIS. STAT. § 59.40(3)(c) provides: "A judge may direct that par. (b) does not apply to certain funds paid into the office. The judge's authority applies only to funds relating to cases before his or her court." The Clerk contends that the first sentence of § 59.40(3)(c) is unambiguous, and that:

> it is clear that the phrase is intended solely as a limitation on the clerk's investment authority; that is, that the judge can order that the power given to the clerk in par. (b) may not be exercised in certain cases. However, the circuit court and [Bayshore] argue that the phrase is more than a "veto" authority over the clerk, but is further a positive grant of authority to a judge to take funds from the clerk for private investment.

¶ 18. Bayshore does not explicitly state whether it believes WIS. STAT. § 59.40(3)(c) is ambiguous. However, it asserts that

> [o]nce a court declares subsection (b) inapplicable in any given case, the Clerk loses any claim to, influence over, or right in the funds on deposit. No other statute gives the Clerk the right to use another person's money for the county's benefit. With no remaining claim to the Award, the Clerk has no basis upon which to object to the Circuit Court engaging its inherent and equitable power to direct where and how the funds will be held until reaching their final distribution.

Bayshore explains: "[T]he Clerk's ability to invest

others' money and retain the earnings thereon is subject to court's veto in any given case."

¶ 19. The trial court interpreted the statute similar to Bayshore, concluding that Wis. Stat. § 59.40(3)(c) confers on the trial court discretion "to decide whether the funds may be transferred or shall remain invested in the County's general fund." It was with this in mind that the trial court exercised its discretion and ordered the funds transferred to a private money market account where interest could accrue for the property owners' benefit.

¶ 20. We conclude that Wis. Stat. § 59.40(3)(c) is ambiguous because it is "capable of being understood by reasonably well-informed persons in two or more senses." *See Kalal*, 271 Wis. 2d 633, ¶ 47. Specifically, the sentence "A judge may direct that par. (b) does not apply to certain funds paid into the office" could be interpreted as affecting: (1) a clerk's authority to invest deposited funds; (2) a clerk's authority to invest funds in certain investment vehicles; (3) the directive that interest shall accrue for the benefit of the general fund; or (4) a clerk's authority to continue to manage the deposited funds.

¶ 21. Because we conclude that Wis. Stat. § 59.40(3)(c) is ambiguous, we must look to the scope, history, context, subject matter, and object of the statute in order to ascertain legislative intent. *See Kalal*, 271 Wis. 2d 633, ¶ 48. We begin with the legislative history, which provides considerable insight.

¶ 22. The original statute that gave clerks of courts power to invest deposited funds was Wis. Stat. § 59.42(14) (1969). *See Bronfman*, 164 Wis. 2d at 723. Section 59.42(14) (1969) provided in its entirety:

> INVESTMENT OF FUNDS NOT IDENTIFIABLE. The clerk may invest any funds paid into his office and which are

505

being held for repayment, but which are not specifically identifiable to any account because of their necessary intermingling with related transactions. Such investments shall be made in suitably protected accounts in the same manner as a trustee would be required to invest funds held in trust, and all income that may accrue shall be paid into the county general fund.

Section 59.42(14) (1969) was renumbered and amended in 1979, resulting in subsections (a) and (b), which provided:

INVESTMENT OF FUNDS. (a) Except as provided in par. (b), the clerk may invest any funds paid into his or her office and which are being held for repayment. The investments shall be made in suitably protected accounts in the manner specified in s. 66.04(2) and all income that may accrue shall be paid into the county general fund.

(b) A judge may direct that par. (a) does not apply to certain funds paid into the office. The judge's authority applies only to funds relating to cases before his or her court.

*See* § 59.42(14) (1979).

¶ 23. The 1979 legislation included the following analysis from the Legislative Reference Bureau:

Presently, a clerk of a court of record may invest funds paid into his or her office in the same manner a trustee would be required to invest funds held in trust. The income is paid into the county general fund. The funds covered are those which are being held for repayment, but which are not specifically identifiable to any account due to necessary intermingling with related transactions.

This proposal specifies that the investment provisions relate to all funds paid into the clerk's office, but

506

that a judge may direct that the investment provisions do not apply to certain funds paid into the office relating to cases handled by the judge.

For further information, see the fiscal estimate which will be printed as an appendix to the proposal.

Analysis of 1979 Assembly Bill 756. One attached fiscal estimate drafted by the Department of Local Affairs and Development stated:

The bill extends the permissive authority of a clerk of court to invest any funds paid to the clerk's office unless a judge specifies otherwise for funds relating to cases before the judge's court. The bill would increase the potential funds available and therefore increase the investment income derived from clerk of courts accounts. The bill would therfore [sic] potentially result in increased revenues for counties.

The exact fiscal effect of this bill, however, is not possible to determine because of the following unknowns:

1. The exact amount of funds potentially available to the clerk of court for investment.

2. The exact rate of return that the clerk of court could receive on invested funds.

3. The length of time that funds may be invested.

4. The frequency with which a judge would exercise his or her individual discretion relating to investment of funds for cases before his or her court.

¶ 24. A second fiscal estimate, drafted by the Director of State Courts, stated:

This bill expands the investment powers of the clerk of circuit court but *allows a judge to direct that*

*the investment provisions do not apply* to certain funds in cases handled by the judge.

Although this measure would increase the amount of funds available for investment, it is not expected to have much effect upon the time of the clerk of court. As a result, no state or local fiscal impact is estimated for this bill.

(Emphasis added.)

¶ 25. This legislative history is illuminating. Neither fiscal estimate spoke in terms of removing the funds from the clerk's control, but rather only of allowing a judge to direct that investment provisions did not apply. It is clear that the primary purpose of the legislation was to alter the clerk's authority to invest funds within his or her control. Indeed, there was a handwritten note on one draft that expressed concern about continuing to allow clerks to invest accounts "in the same manner as a trustee would be required to invest funds held in trust . . . ." *See* Wis. Stat. § 59.42(14) (1977). That handwritten note states that the current provision represents the " 'Prudent man' rule" and that "this is much too broad an authority for public funds." This handwritten note suggested language that would limit the type of investments the clerk could make; that suggestion appears to have resulted in the language "in the manner specified in s. 66.04(2)." *See* § 59.42(14)(a) (1979).

¶ 26. Wisconsin Stat. § 59.42(14)(b) (1979) was created at the same time as changes were made to specifically describe the clerk's investment authority. There is no suggestion in any of the legislative history that the legislation was intended to remove the clerk's authority to continue to manage deposited funds or to

cast doubt on the intent that the counties benefit from such investment. These facts provide convincing evidence that the intent of the legislature, expressed in § 59.42(14)(b) (1979) (now Wis. Stat. § 59.40(3)(c)), was only to allow the trial court to limit or veto the clerk's investment authority. Nothing in the legislative history supports a legislative intent to create a new procedure in this statute whereby the trial court could remove the award from the clerk's control and direct that those whose land was condemned receive future interest on the award.

¶ 27. Had the legislature intended by Wis. Stat. § 59.42(14) (1979) to allow the trial court to direct removal of funds from the clerk's control while litigation was pending, it could have modified existing statutes rather than add subsec. (b) to § 59.42(14) (1979). For example, the legislature has created Wis. Stat. § 757.25,[8] which permits removal of funds held for repayment in limited circumstances which do not apply here. The legislature has also specifically provided a mechanism for condemnations under Wis. Stat. § 32.06 whereby a property owner can withdraw an award by

---

[8] Wisconsin Stat. § 757.25 provides:

**Money in court, how deposited.** The judge of any court of record on the application of a party to any action or proceeding therein who has paid $1,000 or more into court in the action or proceeding may order the money to be deposited in a safe depository until the further order of the court or judge thereof. After the money has been so deposited it shall be withdrawn only upon a check signed by the clerk of the court pursuant to whose order the deposit was made and upon an order made by the court or the judge thereof. The fee for the clerk's services for depositing and disbursing the money is prescribed in s. 814.61 (12) (a).

The parties agree that § 757.25 does not apply here because the depositing authority, the CDA, did not seek to remove the funds from the Clerk's control.

509

posting a bond for half the amount of the award to insure that it will pay any amount due to the condemning authority if there is a court reduction in the award. *See* § 32.06(11).[9] Interpreting WIS. STAT. § 59.40(3)(c) as allowing the trial court to remove the award from the clerk's control and allow litigants to earn interest on the award while litigation continues would undermine and render superfluous these other statutes that allow the withdrawal of funds from the clerk of courts only under certain limited circumstances. This would violate the rules of statutory construction that we not construe a statute so as to render superfluous provisions of other statutes, *see Blazekovic v. City of Milwaukee*, 2000 WI 41, 30, 234 Wis. 2d 587, 610 N.W.2d 467, and that we interpret each statute "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results[,]" *Kalal*, 271 Wis. 2d 633, ¶ 46.

¶ 28. Wisconsin courts have also recognized that " 'where a statute with respect to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant in showing that a different intention existed.' " *Kimberly-Clark Corp. v. Public Serv. Comm'n*, 110 Wis. 2d 455, 463, 329 N.W.2d 143 (1983) (citation omitted).

---

[9] WISCONSIN STAT. § 32.06(11) provides:

WITHDRAWAL OF COMPENSATION PAID INTO COURT; BOND. If either party appeals from the award of the commission, the owner shall not be entitled to receive the amount of compensation paid into court by condemnor unless the owner files with the clerk of the court a surety bond executed by a licensed corporate surety company in an amount equal to one-half of the commission's award, conditioned to pay to the condemnor, any sums together with interest and costs as allowed by the court, by which the award of the commission may be diminished.

The legislature has created provisions that allow for the removal of funds from the clerk's control in condemnation cases proceeding under Wɪꜱ. Sᴛᴀᴛ. § 32.06, but has not done so with respect to condemnation cases proceeding under Wɪꜱ. Sᴛᴀᴛ. § 32.05. Had the legislature wanted to provide a mechanism for pre-dispute resolution withdrawal for condemnations under § 32.05, it could have done so, as it has done for condemnations under § 32.06. The failure to provide that alternative here is a legislative decision that should not be ignored.

¶ 29. Finally, we note that there is no indication in any of the legislative history, condemnation statutes or statutes governing the deposit of funds with the clerk of courts that suggests that the legislature intended to create an exception to its policy determination that the county, rather than the parties disputing entitlement to deposited funds, should benefit from the accrual of interest. The legislature has made that policy decision. We have previously held that such policy is not an unlawful taking. *See Bronfman*, 164 Wis. 2d at 727–29.

¶ 30. Having considered the scope, history, context, subject matter, and object of the statute in order to ascertain legislative intent, *see Kalal*, 271 Wis. 2d 633, ¶ 48, we are convinced that the legislature's intent in creating Wɪꜱ. Sᴛᴀᴛ. § 59.40(3)(c) was not to allow the trial court to remove funds from the clerk's management or direct that any earned interest be given to the litigants rather than the county's general fund.[10] For these reasons, we conclude that the trial court lacked

_____

[10] We do not decide whether Wɪꜱ. Sᴛᴀᴛ. § 59.40(3)(c) allows a trial court to prevent the clerk of courts from investing deposited funds at all, or whether that section simply allows the trial court to limit the clerk's choice of investment vehicles, or both, *see* ¶ 20, as this decision is not necessary to resolve this case, and was not fully briefed by the parties. *See State v.*

authority to order the Clerk to transfer the Award to a private money market account where the interest would accrue for the litigants' benefit. We reverse and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.

¶ 31. FINE, J. (*dissenting*). In my view, by misreading the clear language of WIS. STAT. § 59.40(3), Milwaukee County seeks to hijack funds that WIS. STAT. § 32.05(7)(d) says belongs to others. The Majority agrees with Milwaukee County. I respectfully dissent.

¶ 32. As the Majority recognizes, WIS. STAT. § 32.05(7)(d), which is applicable to this case, provides, as material here, that a condemnor's check "for the amount of the award" (less deductions not relevant here) shall either be sent to the property owners "or be deposited with the clerk of the circuit court of the county *for the benefit of the persons named in the award.*"[1] (Emphasis added.) As the Majority also notes, WIS. STAT. § 59.40(3) sets the general rule as to how money deposited with the clerk of circuit court is handled. It reads:

> CLERK OF COURT; FEES; INVESTMENT OF FUNDS. (a) The clerk of the circuit court shall collect the fees that are prescribed in ss. 814.60 to 814.63. The clerk may refuse to accept any paper for filing or recording until the fee prescribed in subch. II of ch. 814 or any applicable statute is paid.
>
> (b) Except as provided in par. (c), the clerk may invest any funds that are paid into his or her office and are being held for repayment. The investments shall be made in suitably protected accounts in the manner

*Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

[1] The full statute as material to this appeal is set out in footnote two of the Majority opinion.

specified in s. 66.0603 (1m) and all income that may accrue shall be paid into the county general fund.

> (c) *A judge may direct that par. (b) does not apply to certain funds paid into the office.* The judge's authority applies only to funds relating to cases before his or her court.

(Emphasis added.) Section 59.40(3)(b) has three parts. It:

> (1) empowers the Clerk to "invest" funds paid into his or her office;

> (2) limits the scope of the Clerk's investment strategy; and, also,

> (3) says that investment income goes to the "county general fund."

But, these grants of authority are specifically limited by subparagraph (c), which permits the judge to direct, with respect "to funds relating to cases before his or her court," that subparagraph (b) not apply. Subparagraph (c) encompasses, *in haec verba,* the entirety of subparagraph (b), and, as material here, thus specifically permits the trial judge to direct that income from funds relating to cases pending in his or her court not be paid into the county's general fund, but, rather, as required here by § 32.05(7)(d), be held "for the benefit of the persons named in the award."[2] That is the nub of what the trial judge did in this case, and I would affirm.

[2] Thus, I do not understand why the Respondents spent so many pages of their appellate brief on a wide-ranging, irrelevant, confusing, and essentially self-defeating excursion into the limitless landscape of "inherent authority."