IN RE CITY OF GLENDALE COMMUNITY DEVELOPMENT AUTHORITY CONDEMNATION AWARD, Parcel 14:

HSBC REALTY CREDIT CORPORATION, Petitioner,

v.

CITY OF GLENDALE, Respondent,

John BARRETT, Intervenor-Appellant,

BAYSHORE TOWN CENTER, LLC, Interested Person-Respondent-Petitioner,

ALTERRA COFFEE ROASTERS, Athletes Foot of Glendale, Abercrombie & Fitch Stores, Inc., Barnes & Noble, Blockbuster Entertainment, Regis Corporation, GNC Store #2956, Gymboree Retail #433, Luxottica Retail Group, Touchdown, Inc., d/b/a Pro Image, Mutual Savings Bank, Tumbleweed/Diamondback Management, Nautilus, Voicestream PCS II, North Shore Bank, Walgreen Company #647 and Sears Roebuck & Company, Interested Persons.

Supreme Court

1

*No. 2005AP1042. Oral argument January 4, 2007.*
*—Decided July 11, 2007.*

**2007 WI 94**

(Also reported in 735 N.W.2d 77.)

For the interested person-respondent-petitioner there were briefs by *Daniel Kelly, Paul J. Stockhausen,* and *Reinhart Boerner Van Deuren s.c.,* Milwaukee, and oral argument by *Daniel Kelly.*

For the intervenor-appellant there was a brief and oral argument by *Mark A. Grady,* principal assistant corporation counsel.

An amicus curiae brief was filed by *Alan Marcuvitz, Andrea H. Roschke,* and *Michael Best & Friedrich LLP,* Milwaukee, on behalf of the Community Development Authority of the City of Glendale.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals[1] reversing an order of the Milwaukee County Circuit Court, Richard J. Sankovitz, Judge, that transferred the condemnation award in an eminent domain case from the control of the Milwaukee County Clerk of Court to a money market account at a private bank. The review requires us to interpret the interplay among three statutory provisions: Wis. Stat. §§ 59.40(3)(b), 59.40(3)(c), and 32.05(7)(d).[2] We are also required to interpret Wis. Stat. § 814.61(12)(a)1. on a different issue.

---

[1] *HSBC Realty Credit Corp. v. City of Glendale,* 2006 WI App 160, 295 Wis. 2d 493, 721 N.W.2d 489.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 2. Wisconsin Stat. § 59.40(3)(b) grants a clerk of court (clerk) authority to invest "any funds" that are paid into the clerk's office and are being held for repayment, but it requires that the interest earned on these funds be paid into the county general fund. Wisconsin Stat. § 59.40(3)(c) allows a circuit court judge to direct that § 59.40(3)(b) not apply to "certain funds." The specific question we must decide is whether, after directing that § 59.40(3)(b) not apply to a condemnation award deposited with the clerk, a circuit judge has additional authority to transfer the award from the clerk's control into a private money market account so that it can earn interest for the benefit of the ultimate recipients of the award.

¶ 3. A third statute, Wis. Stat. § 32.05(7)(d), is relevant because it provides that "compensation" awards (i.e., condemnation awards) may "be deposited with the clerk of the circuit court . . . for the benefit of the persons named in the award."

¶ 4. We conclude that Wis. Stat. § 59.40(3)(c) empowers a circuit judge not only to veto the clerk's authority to invest "certain funds" and pay all interest on those funds into the county general fund, but also to direct the clerk to transfer "certain funds" from the clerk's control into a secure private account for the benefit of persons ultimately entitled to the funds. The judge's power under § 59.40(3)(c) is especially clear with respect to condemnation awards, when § 59.40(3)(c) is read in conjunction with Wis. Stat. § 32.05(7)(d). Nonetheless, the judge's power under Wis. Stat. § 59.40(3)(c) should be exercised with sound discretion, with the consent, if possible, of all affected parties, and with a prudence that assures that any funds transferred from the clerk's control be placed in "suitably protected accounts." We conclude that the circuit judge met these

4

standards in this case. In addition, we conclude that in this case the clerk was not entitled to a transfer fee under Wis. Stat. § 814.61(12)(a).[3] Consequently, we reverse the decision of the court of appeals.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

¶ 5. The City of Glendale's Community Development Authority (CDA) embarked on a project to redevelop the Bayshore Mall. It condemned a parcel of commercial real estate containing a number of existing businesses. On December 10, 2004, the CDA deposited the condemnation award of $14,439,294.84 with Milwaukee County Clerk of Court John Barrett (Clerk Barrett) for the benefit of the "parties of interest" or "interested persons," pursuant to Wis. Stat. § 32.05(7)(d).[4] The "interested persons" in these circumstances were HSBC Realty Credit Corporation; Bayshore Town Center, LLC; Abercrombie & Fitch Stores, Inc.; Alterra Coffee Roasters; Athlete's Foot of Glen-

---

[3] We are not asked to redistribute the interest the county earned on the condemnation award before the award was transferred by the court.

[4] The condemnation award named multiple interested persons. They included the property owner, the bank, and numerous parties with leasehold interests. The circuit court began proceedings on December 21, 2004, to apportion the award among the named interested parties. The substantial gap between the amount of the condemnation award and the amounts that the various parties believed they were owed, resulted in a protracted dispute. At the time Bayshore Town Center, LLC (Bayshore) filed its brief in October 2006, there were only three remaining parties with any claim to the condemnation award: HSBC Realty Credit Corporation, Bayshore, and Walgreen Co. #647. The award of $14,439,294.84 is the amount of the condemnation award, $14,755,000.00, minus the prorated 2004 real estate taxes.

5

dale; Barnes & Noble #2655; Blockbuster Entertainment; GNC Store #2956; Luxottica Retail Group; Mutual Savings Bank; Nautilus; North Shore Bank; Regis Corporation (Trade Secrets #7615); Gymboree Retail #433; Touchdown Inc. d/b/a Pro Image; Sears Roebuck & Company; Tumbleweed/Diamondback Management; Voicestream PCS II; and Walgreen Company #647.

¶ 6. The parties were notified of the deposit and were advised that a party entitled to all or part of the award could receive its proper share by filing a petition to distribute. The size of the award and how it was to be apportioned among the parties were both issues in dispute, but these issues are not before us in this appeal.

¶ 7. Upon deposit of the award, Clerk Barrett exercised his authority under Wis. Stat. § 59.40(3)(b) to invest the funds.[5] He invested the award in Milwaukee County's general fund with the interest to go to the fund. The award would earn about 2 percent interest annually, producing about $24,000 a month for Milwaukee County.

¶ 8. On January 6, 2005, Bayshore Town Center, LLC (Bayshore) filed a motion with Judge Sankovitz, asking for an order to place the award into an interest bearing account for the benefit of the ultimate recipients of the award. Bayshore named a preferred depository. Bayshore estimated that the award would earn

---

[5] Wisconsin Stat. § 59.40(3)(b) provides the following:

> Except as provided in par. (c), the clerk may invest any funds that are paid into his or her office and are being held for repayment. The investments shall be made in suitably protected accounts in the manner specified in s. 66.0603(1m) and all income that may accrue shall be paid into the county general fund.

Wis. Stat. § 59.40(3)(b).

between $400 and $800 of interest per day. Bayshore also sought an order prohibiting Clerk Barrett from collecting the fee under Wis. Stat. § 814.61(12)(a)1. for transferring the award to a private bank. None of the "interested persons" objected to Bayshore's motion, but Clerk Barrett successfully moved to intervene to challenge the motion.

¶ 9. On February 3, 2005, the circuit court granted Bayshore's motion and ordered that Clerk Barrett transfer the award from the county general fund into a separate money market account at the suggested private bank, with interest accruing to the benefit of the ultimate recipients of the award. The court also provided that neither the award nor the interest be released or disbursed without court order and that the transfer of the award not be subject to the fee in Wis. Stat. § 814.61(12)(a)1.

¶ 10. In an opinion supporting the order, the circuit court reasoned that it had discretion under Wis. Stat. § 59.40(3)(c) to decide whether the award could be transferred or should remain invested in the county's general fund.[6] The circuit court weighed the value of the interest to the county against the impact upon the ultimate recipients of the award and decided that the amount of interest that would be diverted to the county would be "truly a windfall." The court observed that the county did not need to expend much effort to protect or manage the award and to the extent that the county had expended any effort, the county had "been more than handsomely compensated by the $24,000 or more

---

[6] Wisconsin Stat. § 59.40(3)(c) provides the following: "A judge may direct that par. (b) does not apply to certain funds paid into the office. The judge's authority applies only to funds relating to cases before his or her court." Wis. Stat. § 59.40(3)(c).

7

that it already ha[d] earned on the funds just over the passage of the past month."

¶ 11. Clerk Barrett appealed, and the court of appeals reversed. The court of appeals determined that Wis. Stat. § 59.40(3)(c) is ambiguous because the language, "A judge may direct that par. (b) does not apply to certain funds paid into the office," is capable of differing interpretations. *HSBC Realty Credit Corp. v. City of Glendale,* 2006 WI App 160, ¶ 20, 295 Wis. 2d 493, 721 N.W.2d 489. The court stated that the language could be interpreted as affecting the following: "(1) a clerk's authority to invest deposited funds; (2) a clerk's authority to invest funds in certain investment vehicles; (3) the directive that interest shall accrue for the benefit of the general fund; or (4) a clerk's authority to continue to manage the deposited funds." *Id.*

¶ 12. Because it concluded that Wis. Stat. § 59.40(3)(c) was ambiguous, the court of appeals relied on legislative history to determine that "the legislature's intent in creating Wis. Stat. § 59.40(3)(c) was not to allow the trial court to remove funds from the clerk's management or direct that any earned interest be given to the litigants rather than the county's general fund." *Id.,* ¶ 30. The court of appeals therefore ruled that the circuit court did not have statutory authority to order Clerk Barrett to transfer the award into a private money market account. *Id.* The court of appeals also ruled that the circuit court did not have any inherent or equitable authority to order a transfer from Clerk Barrett's office. *Id.,* ¶ 13.

¶ 13. Judge Ralph Adam Fine dissented, reasoning that the clerk's grants of authority in Wis. Stat. § 59.40(3)(b) to invest the award and direct the interest to the county general fund are limited by § 59.40(3)(c). *Id.,* ¶ 32 (Fine, J., dissenting). Judge Fine declared that

8

§ 59.40(3)(c) encompasses the entirety of § 59.40(3)(b) and thus allows the circuit court judge "to direct that income from funds relating to cases pending in his or her court not be paid into the county's general fund, but, rather, as required here by § 32.05(7)(d), be held 'for the benefit of the persons named in the award.' " *Id.*

¶ 14. Bayshore petitioned for review, which we granted on September 12, 2006.[7]

## II. STANDARD OF REVIEW

¶ 15. This case involves the interpretation of Wis. Stat. §§ 59.40(3)(b), 59.40(3)(c), and 32.05(7)(d). It also involves the interpretation of Wis. Stat. § 814.61(12)(a)1. Statutory interpretation presents a question of law that we review de novo. *State v. Waushara County Bd. of Adjustment,* 2004 WI 56, ¶ 14, 271 Wis. 2d 547, 679 N.W.2d 514.

## III. DISCUSSION

¶ 16. This case requires us to interpret the interplay among three statutory provisions, namely Wis. Stat. §§ 59.40(3)(b), 9.40(3)(c), and 32.05(7)(d). Bayshore and Clerk Barrett agree that these statutes are not ambiguous. They disagree, however, as to their interpretation. Bayshore argues that the plain language of Wis. Stat. § 59.40(3)(c) allows a judge to veto the clerk's authority to invest and retain interest on the award. Bayshore argues that § 59.40(3)(c) also allows

---

[7] Because we decide this case on statutory grounds, we do not address the parties' arguments concerning the circuit court's inherent and equitable authority or the constitutional right to interest on a condemnation award.

9

the judge to transfer the funds out of the clerk's control into a private interest bearing account to fulfill the statutory mandate in Wis. Stat. § 32.05(7)(d) that the award be held for the benefit of the persons named in the award.

¶ 17. Clerk Barrett agrees that the plain language of Wis. Stat. § 59.40(3)(c) allows a judge to veto the clerk's authority to invest and collect interest on the award for the county. However, Clerk Barrett argues that nowhere in their plain language do any of the statutes allow a judge to transfer the award out of the clerk's custody and control into a private account so that interest can accrue for the benefit of the persons named in the award.

¶ 18. We agree with both parties that the language of the statutes is not ambiguous. We disagree with Clerk Barrett's interpretation, however, and hold that the statutes allow the a judge not only to deny the clerk authority to invest the award and pay all interest into the county general fund, but also to transfer the award from the clerk's control into a private interest bearing account, so that the interest can accrue for the benefit of persons ultimately entitled to the award. We reach this conclusion to avoid plainly unreasonable results.

¶ 19. We begin our analysis with the language of the statutes. When the meaning of statutes is plain, we usually stop our inquiry. *Seider v. O'Connell*, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659. We give statutory language its common, ordinary, and accepted meaning. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a

10

whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.,* ¶ 46.

¶ 20. Keeping these canons of statutory construction in mind, we begin by analyzing the plain language of Wis. Stat. § 59.40(3). Section 59.40(3) reads as follows:

(3) Clerk of court; fees; investment of funds.

(a) The clerk of the circuit court shall collect the fees that are prescribed in ss. 814.60 to 814.63. The clerk may refuse to accept any paper for filing or recording until the fee prescribed in subch. II of ch. 814 or any applicable statute is paid.

(b) Except as provided in par. (c), the clerk may invest any funds that are paid into his or her office and are being held for repayment. The investments shall be made in suitably protected accounts in the manner specified in s. 66.0603(1m) and all income that may accrue shall be paid into the county general fund.

(c) A judge may direct that par. (b) does not apply to certain funds paid into the office. The judge's authority applies only to funds relating to cases before his or her court.

Wis. Stat. § 59.40(3).

¶ 21. Paragraph (a) of the statute begins with a broad statement of the clerk's rights and duties, including the clerk's right to collect certain fees "prescribed" in Chapter 814.

¶ 22. Paragraph (b) appears to have four components:

1. The clerk may invest any funds paid into the clerk's office that are being held for repayment;

11

2. The clerk's investment strategy is limited to the options set out in Wis. Stat. § 66.0603(1m) and must be in "suitably protected accounts;"[8]

3. All income from the clerk's investment shall be paid into the county general fund; and

4. The prior three components apply unless a judge acts under paragraph (c).

¶ 23. Paragraph (c) has the following components:

1. The judge may direct that paragraph (b) does not apply to certain funds paid into the clerk's office.

2. The judge's authority to "veto" the application of paragraph (b) applies only to funds relating to cases before the judge's court.

¶ 24. Paragraph (c) does not spell out the extent of the judge's authority beyond his or her power to direct that paragraph (b) does not apply. Hence, there are two possible interpretations. The first interpreta-

---

[8] Wisconsin Stat. § 66.0603(1m) is part of Subchapter VI (Finance; Revenues) of Chapter 66 (Municipal Law). Section 66.0603 is entitled "Investments," and subsection (1m) provides in part that a "county ... may invest any of its funds not immediately needed in any of the following." The "following" include:

1. Time deposits in any credit union, bank, savings bank, trust company or savings and loan association which is authorized to transact business in this state if the time deposits mature in not more than 3 years.

2. Bonds or securities issued or guaranteed as to principal and interest by the federal government, or by a commission, board or other instrumentality of the federal government.

Subsection (1m) gives the clerk a broad but not unlimited array of investment options.

tion is that after the judge exercises authority under paragraph (c) to direct that paragraph (b) does not apply, the judge has no complementary authority to transfer funds from the clerk's control *or* direct the clerk to act differently from how he or she would act under paragraph (b). According to this interpretation, the judge's authority is purely negative: he or she may block the clerk from investing certain funds and earning interest on these funds for the county, but the judge may not in any way orchestrate the investment of funds for the benefit of someone other than the county.

¶ 25. The second interpretation is that after the judge exercises authority under paragraph (c) to direct that paragraph (b) does not apply, the judge has complementary authority to direct the investment of the funds and order that interest accrue to the persons entitled to the funds instead of to the county.

¶ 26. The first interpretation, which grants the judge only negative authority, is in essence the interpretation espoused by Clerk Barrett. As Bayshore points out, this interpretation is the equivalent of saying that if the clerk cannot retain control of the condemnation award, then no one can control it and put it to good use. This ascribes to the legislature an intent to limit a judge's authority to no more than directing the clerk to stash the funds under a mattress for safekeeping.

¶ 27. Courts try to avoid unreasonable results in the interpretation of statutes, and we will attempt to achieve that objective here. Under paragraph (b) the clerk is granted authority to invest "any funds that are paid into his or her office and are being held for repayment." We note that the statute does not *require* the clerk to invest these funds; yet there are situations in which a clerk who merely held deposited funds and did not invest them would be considered guilty of

13

nonfeasance, or failing to act as a trustee or good steward.[9] Accordingly, one must conclude that if a clerk is expected to invest certain funds entrusted to him, a judge should be subject to the same expectations. Hence, when the statute gives a judge explicit authority to deny the clerk power to invest certain funds, it must implicitly convey to the judge authority to effect a

---

[9] A clerk who kept all deposited funds in a safe and did not invest them would be reminiscent of the fearful servant in the New Testament Parable of the Talents. *See* Matthew 25:14–27:

> For it will be as when a man going on a journey called his servants and entrusted to them his property; to one he gave five talents, to another two, to another one, to each according to his ability. Then he went away. He who had received the five talents went at once and traded with them; and he made five talents more. So also, he who had the two talents made two talents more. But he who had received the one talent went and dug in the ground and hid his master's money. Now after a long time the master of those servants came and settled accounts with them. And he who had received the five talents came forward, bringing five talents more, saying, "Master, you delivered to me five talents; here I have made five talents more." His master said to him, "Well done, good and faithful servant; you have been faithful over a little, I will set you over much; enter into the joy of your master." And he also who had the two talents came forward, saying, "Master, you delivered to me two talents; here I have made two talents more." His master said to him, "Well done, good and faithful servant; you have been faithful over a little, I will set you over much; enter into the joy of your master." He also who had received the one talent came forward, saying, "Master, I knew you to be a hard man, reaping where you did not sow, and gathering where you did not winnow, so I was afraid, and I went and hid your talent in the ground. Here you have what is yours." But his master answered him, "You wicked and slothful servant! You knew that I reap where I have not sowed, and gather where I have not winnowed? *Then you ought to have invested my money with the bankers,* and at my coming I should have received what was my own with interest."

*The Oxford Annotated Bible,* Revised Standard Version 1205–06 (1962) (emphasis added). *See also* Luke 19:12–13, *The Oxford Annotated Bible, supra,* at 1273.

productive use of the funds, else the judge would be foolish for acting under the statute.

¶ 28. We acknowledge that the clerk's "if I can't have it, no one can" interpretation of Wis. Stat. § 59.40(3)(c) can be squared with the text. However, for the reasons stated above, such a rigid interpretation would be unreasonable. In addition, because we are dealing with a condemnation award in this case, another statute must be considered. Wisconsin Stat. § 32.05(7)(d) directs a condemnor to mail the compensation award to one of the owners of the property condemned *or* deposit it "with the clerk of the circuit court of the county *for the benefit of the persons named in the award." Id.* (emphasis added).[10] If the condemnor exercises the first option, the owners will have the condemnation award to safeguard and to invest. If the condemnor exercises the second option, the owners and persons interested in the award will not have control of the award and will gain no interest on the award unless the clerk or the court invests it for them. In the context

---

[10] Wisconsin Stat. § 32.05(7)(d) provides the following:

On or before said date of taking, a check, naming the parties in interest as payees, for the amount of the award less outstanding delinquent tax liens, proportionately allocated as in division in redemption under ss. 74.51 and 75.01 when necessary and less prorated taxes of the same year, if any, likewise proportionately allocated when necessary against the property taken, shall at the option of the condemnor be mailed by certified mail to the owner or one of the owners of record *or be deposited with the clerk of the circuit court of the county for the benefit of the persons named in the award.* The clerk shall give notice thereof by certified mail to such parties. The persons entitled thereto may receive their proper share of the award by petition to and order of the circuit court of the county. The petition shall be filed with the clerk of the court without fee.

Wis. Stat. § 32.05(7)(d) (emphasis added).

of the three statutory provisions—Wis. Stat. §§ 59.40(3)(b), 59.40(3)(c), and 32.05(7)(d)—the only reasonable interpretation is that the legislature has given the judge complementary authority under Wis. Stat. § 59.40(3)(c) to fulfill the statutory directive under Wis. Stat. § 32.05(7)(d), either by ordering the clerk to transfer a condemnation award from the clerk's office to a suitably protected interest bearing account for the benefit of the ultimate recipients, *or* by capturing the interest on the clerk's investment of the award for the benefit of the ultimate recipients. To take either action, the judge must possess positive authority.

¶ 29. Focusing solely on Wis. Stat. § 32.05(7)(d), the parties disagree as to whether a statute that provides that *a condemnation award* be held "for the benefit of the persons named in the award" requires that any *interest* on that award also be held "for the benefit of the persons named in the award." This issue implicates the clerk's duty with respect to *a condemnation award* under Wis. Stat. § 59.40(3)(b), regardless of whether a judge acts under § 59.40(3)(c).

¶ 30. This issue was answered, at least tentatively, in *Bronfman v. Douglas County,* 164 Wis. 2d 718, 476 N.W.2d 611 (Ct. App. 1991). In *Bronfman,* the city of Superior condemned property and tendered approximately $1.5 million to the owners by depositing the funds with the clerk. *Id.* at 721. The owners declined the award and appealed. *Id.* They later changed their minds, withdrew the appeal, and demanded the interest earned on the deposited funds during the pendency of the appeal. *Id.* When the circuit court rejected their demand, citing Wis. Stat. § 59.42(2) (1989–90) (now § 59.40(3)(b)), the owners appealed. They attempted to distinguish certain funds like condemnation awards from other funds deposited with the clerk, and they challenged the

assignment of all interest from such funds to the county as an unconstitutional taking.

¶ 31. In affirming the circuit court, the court of appeals set out the legislative history of Wis. Stat. § 59.42, *Bronfman,* 164 Wis. 2d at 722–24; ruled that the words "any funds" were intended to include condemnation awards, *id.* at 724; and upheld the constitutionality of the statute, *id.* at 727.

¶ 32. We need not revisit the constitutional issue here because the constitutionality of paragraph (b) of Wis. Stat. § 59.40(3) is not before us *so long as we interpret paragraph (c) of the statute to permit a judge to capture the interest on certain deposited funds (such as condemnation awards) for the benefit of interested persons.* The interested persons here do not challenge the county's retention of approximately $24,000 in interest earned on their award before the circuit court ordered the funds sent to a money market account at a private bank.

¶ 33. We do, however, need to revisit the legislative history of Wis. Stat. § 59.40(3) set out in *Bronfman* because in one respect it is not correct.

¶ 34. The legislature created the forerunner of Wis. Stat. § 59.40(3)(b) in 1969. *See* ch. 43, Laws of 1969. The vehicle was 1969 A.B. 226, introduced by Representative Joseph E. Jones of Milwaukee "by request of Milwaukee County." The bill gave clerks of court the power to invest funds they received that were not identifiable to any account. The investments had to be made in protected accounts "and all income that may accrue shall be paid into the county general fund." *See* Wis. Stat. § 59.42(14) (1969–70).[11]

---

[11] The full text of Wis. Stat. § 59.42(14) (1969–70) reads as follows:

¶ 35. The *Bronfman* plaintiffs argued that the reference to "any funds" in the statute did not apply to interest on money tendered into court for the benefit of the parties in civil litigation, for that would have meant that plaintiffs would lose the interest on their condemnation award to the county.

¶ 36. To address this question, the *Bronfman* court made this incorrect statement about the legislative history of the 1969 legislation:

> The Legislative Reference Bureau (LRB) records show that the request for a statute to authorize investments by the clerk of the circuit court came from Milwaukee County *and dealt specifically with condemnation awards paid into court.*

*Bronfman,* 164 Wis. 2d at 722–23 (emphasis added). The court supported its statement by quoting at length from an opinion letter by Milwaukee County Corporation Counsel Robert P. Russell explaining proposed legislation:

> Under the existing law money paid to the clerk of the circuit court as damages for the taking of property in condemnation proceedings is paid to the clerk for the benefit of the property owner. The refusal of the property owner to accept the amount tendered as damages does not change the fact that the money actually belongs to him and the clerk is simply holding the funds as trustee. *While the existing law does not*

---

Investment of funds not identifiable. The clerk may invest any funds paid into his office and which are being held for repayment, but which are not specifically identifiable to any account because of their necessary intermingling with related transactions. Such investments shall be made in suitably protected accounts in the same manner as a trustee would be required to invest funds held in trust, and all income that may accrue shall be paid into the county general fund.

*require that the clerk invest such money, if it is invested, the interest thereon belongs to the property owner.* This would be true regardless of the manner of investment, whether by the clerk directly or indirectly through the county treasurer.

We assume that the purpose of the recommendations . . . is to change the existing law not only with respect to monies deposited as damages in condemnation proceedings, but also to cover other monies which might be deposited with the clerk of the circuit court. Without passing upon the merits of such legislation, it would be our opinion that the legislature could properly authorize the clerk of the circuit court, with certain exceptions, such as monies representing the proceeds of minor settlements, to deposit monies received by him . . . where it would be mingled with other funds of the county . . . and with the county retaining the interest earned on such funds. Accordingly, we find no legal obstacle to the adoption of the proposed resolution.

*Id.* at 723 (emphasis added).

¶ 37. What the *Bronfman* court did not explain is that the Russell letter concerned the *failure* of Milwaukee County in the 1965 legislative session—not the 1969 session—to secure legislation that *would* have permitted the county to capture interest on condemnation awards deposited with the clerk. This failure required the Milwaukee County Clerk of Circuit Court to submit a new proposal for the 1969 session, namely:

a proposal to amend or create a section of the statutes to enable the Clerk of Circuit Court to invest "idle" or "floating funds" *pursuant to accepted standards of trustees,* so that such "funds in transit" being held by the Circuit Court and not identifiable as belonging to any particular persons may draw interest and pay for their keep.

19

Letter from Gerard S. Paradowski for Milwaukee County to Rupert Theobald, Drafting Records, 1969 A.B. 226 (on file with the Legislative Reference Bureau, Madison, Wisconsin) (emphasis added). This new proposal did not deal specifically with condemnation awards paid into court. *Contra Bronfman,* 164 Wis. 2d at 722–23.

¶ 38. Hence, the scaled-back legislation in 1969 allowed the clerk to invest only "funds . . . which are not specifically identifiable to any account because of their necessary intermingling with related transactions" (i.e., floating funds) and to pay interest on *these* funds to the county general fund.

¶ 39. A decade later, in the 1979 session, the legislature broadened the statute to read:

> (14) Investment of Funds. (a) Except as provided in par. (b), the clerk may invest *any funds paid into his or her office and which are being held for repayment.* The investments shall be made in suitably protected accounts in the manner specified in s. 66.04(2) and all income that may accrue shall be paid into the county general fund.
>
> (b) A judge may direct that par. (a) does not apply to certain funds paid into the office. The judge's authority applies only to funds relating to cases before his or her court.

Wis. Stat. § 59.42(14) (1979–80) (emphasis added).

¶ 40. The principal purpose of this 1980 revision was to specify that the investment provisions "relate to *all funds* paid into the clerk's office, *but* that a judge may direct that the investment provisions do not apply to certain funds paid into the office relating to cases handled by the judge." Analysis by Legislative Reference Bureau, 1979 A.B. 756; §§ 2–3, ch. 241, Laws of

1979 (emphasis added). In short, after the 1980 legislation, "any funds" did apply to condemnation awards, but the statute also allowed the court to intervene to change the result dictated by then paragraph (a) of the statute. When a judge invoked paragraph (b) of Wis. Stat. § 59.42(14) (now Wis. Stat. § 59.40(3)(c)) to direct that paragraph (a) (now Wis. Stat. § 59.40(3)(b)) does not apply, the statute effected a return to the law as it existed before paragraph (a) of Wis. Stat. § 59.42(14) was enacted. As Milwaukee County Corporation Counsel Robert Russell noted in his letter, the existing law (prior to any enactment or amendment of Wis. Stat. § 59.42(14)) required that any interest earned on a condemnation award deposited with the clerk belonged to the property owner. Thus, implicit in paragraph (b) of Wis. Stat. § 59.42(14) is the legislature's intent to give the judge authority, in addition to veto authority, to remove control of "funds relating to cases before his or her court" from the clerk so that interest earned on the funds may be paid to the persons ultimately entitled to them.

¶ 41. The legislative history of 1979 A.B. 756 does not provide an extensive written explanation of the changes in the statute. Consequently, we rely on the statutory language without the luxury of extensive legislative comment to substantiate our interpretation.

¶ 42. The court of appeals took a different tack. It employed the *absence* of legislative comment to establish legislative intent:

> There is no suggestion in any of the legislative history that the legislation was intended to remove the clerk's authority to manage deposited funds or to cast doubt on the intent that the counties benefit from such investment. These facts provide convincing evidence that the intent of the legislature . . . was only to allow the trial

> court to limit or veto the clerk's investment authority. Nothing in the legislative history supports a legislative intent to create a new procedure in this statute whereby the trial court could remove the award from the clerk's control and direct that those whose land was condemned receive future interest on the award.

*HSBC,* 295 Wis. 2d 493, ¶ 26.

¶ 43. We are not persuaded by this analysis. The court of appeals did not address the legislature's significant broadening of the statute in 1980 or explain its *purpose* in contemporaneously granting a judge authority to countermand the clerk's investment of funds. Surely, the legislature did not give the judge this authority because it was worried about the safety of funds in the clerk's control. We think it likely that the legislature wanted to deal fairly with property owners on condemnation awards and other private funds deposited with the clerk, so as to prevent a county from overreaching *and* to protect the county's interest in other deposited funds. The legislature would have understood, for instance, that counties also condemn property. *See* Wis. Stat. § 32.02. If Wis. Stat. § 59.40(3)(c) did not give a judge the ability to intervene, Wis. Stat. § 59.40(3)(b) would allow a county to keep the county's condemnation award in a county official's control where the county would earn interest on it. The legislature would have understood that giving a county control of condemned property and the condemnation award for that property and the interest on the award would raise serious constitutional questions.

¶ 44. In addition, unless we enter into the realm of a court's inherent authority, the absence of statutory authority for the court to direct that funds be prudently

22

invested elsewhere would prevent the court from acting on an agreement among all parties with a legal claim to the funds.

¶ 45. We reject any notion that our interpretation of Wis. Stat. §§ 59.40(3)(b), 59.40(3)(c), and 32.05(7)(d) is against public policy and discourages speedy resolution of claims by allowing litigants to collect interest pending litigation. As we noted, this case involved a significant condemnation award of $14,439,294.84. The interested persons included the property owner, the bank, and parties with leasehold interests. A condemnation award of this magnitude that names so many interested persons is obviously susceptible to litigation. Property owners should not be denied the interest on their condemnation award as a penalty for litigation delay. Such a penalty, which in this case would have amounted to about $400 to $800 a day, would be against public policy.

¶ 46. We conclude that when Wis. Stat. § 59.40(3)(c) is read in conjunction with Wis. Stat. § 32.05(7)(d), Wis. Stat. § 59.40(3)(c) empowers a circuit judge not only to veto the clerk's authority to invest a condemnation award but also to direct the clerk to transfer a condemnation award from the clerk's control into a private money market account "for the benefit of the persons named in the award" or otherwise invest the funds for the benefit of such persons. Moreover, we think Wis. Stat. § 59.40(3)(c) empowers a circuit judge not only to veto the clerk's authority to invest and control the interest on *condemnation awards* but also veto the clerk's authority over "certain" other funds deposited with the clerk, so long as the funds relate to a case before the judge's court. When the judge exercises his authority under Wis. Stat. § 59.40(3)(c), the judge may cooperate

23

with the clerk to invest the funds and redirect the interest to the persons ultimately entitled to the funds, or it may transfer the funds from the clerk's control into a secure private account where it can earn interest for interested persons.

¶ 47. We are bound to comment that our interpretation of Wis. Stat. § 59.40(3)(c) entails responsibilities not sought by circuit courts. When a court is asked to invoke its power under Wis. Stat. § 59.40(3)(c), it need not automatically grant the request. A court should have a good reason to transfer funds from the clerk's control. In every instance, a court should exercise its power with sound discretion, with the consent, if possible, of all interested parties, and with a prudence that assures that any funds transferred from the clerk's control be placed in "suitably protected accounts." Wisconsin Stat. § 54.12(1)(a) authorizes a circuit court to order a register in probate to deposit the property of a minor or an individual found incompetent "in an interest-bearing account in a bank or other financial institution insured by an agency of the federal government or invest the property in interest-bearing obligations of the United States." Wis. Stat. § 54.12(1)(a). We think this statute describes for a court what is meant by investments in "suitably protected accounts." A court is not an investment advisor.

¶ 48. Because we find that the circuit court did have authority to transfer the award in this case, the issue arises whether Clerk Barrett is entitled to a fee for the transfer under Wis. Stat. § 814.61(12)(a)1.[12] The

---

[12] Wisconsin Stat. § 814.61(12)(a)1. provides in part:

The clerk shall collect the following fees:

. . . .

circuit court found that the transfer of the award was not subject to the disbursement fee provided in § 814.61(12)(a)1. We agree.

¶ 49. A condemnation award is not "a trust fund" under Wis. Stat. § 814.61(12)(a)1. Hence, we look to Wis. Stat. § 757.25 to understand "handling or depositing money." Wisconsin Stat. § 757.25 provides the following:

> Money in court, how deposited. The judge of any court of record on the application of a party to any action or proceeding therein who has paid $1,000 or more into court in the action or proceeding may order the money to be deposited in a safe depository until the further order of the court or judge thereof. After the money has been so deposited it shall be withdrawn only upon a check signed by the clerk of the court pursuant to whose order the deposit was made and upon an order made by the court or the judge thereof. The fee for the clerk's services for depositing and disbursing the money is prescribed in s. 814.61(12)(a).

Wis. Stat. § 757.25. This statute has two prerequisites for a fee: (1) a party to the action has paid at least $1000 into court; and (2) that same party has obtained from the judge an order directing the clerk of court to deposit the money in a safe depository. *See* 73 Op. Att'y Gen. 3, 4–5 (1984).

¶ 50. The CDA deposited the condemnation award with the clerk. If the CDA is deemed a party and if the CDA paid the award "into court," the CDA is still

---

1. For receiving a trust fund, or handling or depositing money under s. 757.25 . . . at the time the money is deposited with the clerk, a fee of $10 or 0.5% of the amount deposited, whichever is greater. In addition, a fee of $10 shall be charged upon each withdrawal or any or all of the money deposited with the clerk.

Wis. Stat. § 814.61(12)(a)1.

not *the* party that obtained an order directing Clerk Barrett to deposit the award with a bank into a money market account. Consequently, one of the prerequisites is not present, and Clerk Barrett is not entitled to a disbursement fee under Wis. Stat. § 814.61(12)(a)1. In any event, as Judge Sankovitz observed, the *Bronfman* court stated that "Wisconsin does not provide both a service fee and retention of the interest." *Bronfman,* 164 Wis. 2d at 727. In a situation like this one, such a fee would be unconscionable because it would bear no relationship to the clerk's actual service.

## IV. CONCLUSION

¶ 51. We conclude that Wis. Stat. § 59.40(3)(c) empowers a circuit judge not only to veto the clerk's authority to invest "certain funds" and pay all interest on those funds into the county general fund, but also to direct the clerk to transfer "certain funds" from the clerk's control into a secure private account for the benefit of persons ultimately entitled to the funds. The judge's power under § 59.40(3)(c) is especially clear with respect to condemnation awards, when § 59.40(3)(c) is read in conjunction with Wis. Stat. § 32.05(7)(d). Nonetheless, the judge's power under Wis. Stat. § 59.40(3)(c) should be exercised with sound discretion, with the consent, if possible, of all affected parties, and with a prudence that assures that any funds transferred from the clerk's control be placed in "suitably protected accounts." We conclude that the circuit judge met these standards in this case. In addition, we conclude that Clerk Barrett is not entitled to a transfer fee under Wis. Stat. § 814.61(12)(a)1. in this case. Consequently, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 52. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I join Justice Butler's concurrence. This case could be decided on narrow grounds. The problems with the existing statute could be identified and the task of redrafting the statute left to the legislature or to a case in which the court must settle a dispute on constitutional grounds.

¶ 53. I write separately to raise an issue that no party addresses but that might be a matter of some concern. This case involved the powers and duties of the office of clerk of circuit court. The office of clerk of circuit court is a constitutional office, Wis. Const. Art. VII, § 12[1]

---

[1] Article VII, section 12 (as amended Nov. 1882, Apr. 2005) states in full that:

(1) There shall be a clerk of circuit court chosen in each county organized for judicial purposes by the qualified electors thereof, who, except as provided in sub. (2), shall hold office for two years, subject to removal as provided by law.

(2) Beginning with the first general election at which the governor is elected which occurs after the ratification of this subsection, a clerk of circuit court shall be chosen by the electors of each county, for the term of 4 years, subject to removal as provided by law.

(3) In case of a vacancy, the judge of the circuit court may appoint a clerk until the vacancy is filled by an election.

(4) The clerk of circuit court shall give such security as the legislature requires by law.

(5) The supreme court shall appoint its own clerk, and may appoint a clerk of circuit court to be the clerk of the supreme court.

(*see also* Art. VI, § 4),[2] and the clerk of circuit court has been a constitutional office since the 1848 state constitution, 1848 Wis. Const. Art. VII, § 12.[3] *State ex rel. Allen v. Lyon,* 45 Wis. 246, 248 (1878); *State v. Van Brocklin,* 194 Wis. 441, 449 (1927) (Eschweiler, J., dissenting) (explaining "[t]he clerk of the circuit court is a constitutional officer").

¶ 54. We have had occasion to discuss the implications of the constitutional nature of the office of sheriff. An issue sometimes raised when a statute governs the constitutional office of sheriff is whether by virtue of being a constitutional office certain duties attach to the office that cannot be altered by statute. Cases addressing this issue as it relates to the office of sheriff date as far back as *State ex rel. Kennedy v. Brunst,* 26 Wis. 412 (1870), and are as recent as *Kocken v. Wis. Council 40,* 2007 WI 72, 301 Wis. 2d 266, 732 N.W.2d 828.

---

[2] Article VI, section 4, as amended most recently in April 2005, states in pertinent part that:

> (1)(a) Except as provided in pars. (b) and (c) and sub. (2), coroners, registers of deeds, district attorneys, and all other elected county officers, except judicial officers, sheriffs, and chief executive officers, shall be chosen by the electors of the respective counties once in every 2 years.
>
> . . . .
>
> (c) Beginning with the first general election at which the president is elected which occurs after the ratification of this paragraph, district attorneys, registers of deeds, county clerks, and treasurers shall be chosen by the electors of the respective counties, or by the electors of all of the respective counties comprising each combination of counties combined by the legislature for that purpose . . . .

[3] Article VII, section 12, of the 1848 constitution stated in pertinent part: "There shall be a clerk of the circuit court, chosen in each county, organized for judicial purposes, by the qualified electors thereof, who shall hold his office for two years, subject to removal as shall be provided by law."

¶ 55. The applicability of this line of cases to the office of clerk of circuit court has not been explored recently by this court. The court of appeals, however, has examined some of the constitutional underpinnings and ramifications of the office of the clerk of circuit court. *See, e.g., Granado v. Sentry Ins.,* 228 Wis. 2d 794, 801–02, 599 N.W.2d 62 (Ct. App. 1999); *Harbick v. Marinette County,* 138 Wis. 2d 172, 179–80, 405 N.W.2d 724 (Ct. App. 1987) (relating to the powers and duties of the office of county clerk).

¶ 56. The parties do not ask us to decide a constitutional issue, and I will not comment on it further. Litigants, courts, and the legislature must be mindful, however, to consider any constitutional powers of the office of clerk of circuit court.

¶ 57. For the reasons set forth, I concur.

¶ 58. LOUIS B. BUTLER, JR., J. (*concurring*). Perhaps I am missing something. Wisconsin Stat. § 32.05(7)(d), which is applicable to this case, provides that a condemnor's check for the amount of the award either be sent to the property owners "or be deposited with the clerk of the circuit court of the county *for the benefit of the persons named in the award.*" (Emphasis added.) Wisconsin Stat. § 59.40(3) sets the general rule as to how money deposited with the clerk is handled. The pertinent portions of that section are as follows:

> (b) Except as provided in par. (c), the clerk may invest any funds that are paid into his or her office and are being held for repayment. The investments shall be made in suitably protected accounts in the manner specified in s. 66.0603(1m) and all income that may accrue shall be paid into the county general fund.

> (c) A judge may direct that par. (b) does not apply to certain funds paid into the office. The judge's authority

applies only to funds relating to cases before his or her court.

Wis. Stat. § 59.40(3).[1] Thus, paragraph (b) of the general statute grants the clerk of courts the authority to invest funds paid into that office in suitably protected accounts, and requires interest income that accrues to be paid into the county general fund. Paragraph (c), on the other hand, provides a judge, in cases before that judge, the authority to veto the application of paragraph (b) to certain funds paid to the clerk. Should a judge direct that Wis. Stat. § 59.40(3)(b) does not apply to certain funds, then gone is the authority of the clerk to invest funds held for repayment under the statute; gone is the authority to invest in suitably protected accounts under the statute; and gone is the requirement that interest income accrued be paid into the county general fund under the statute.

¶ 59. Wisconsin Stat. § 59.40(3)(c) grants the court only a negative statutory veto authority to deem § 59.40(3)(b) inapplicable in some cases. It does not grant the court an additional *positive* authority to affirmatively order a transfer of funds from the clerk's office into a private interest-bearing account, which the majority

---

[1] Wisconsin Stat. § 59.40(3) provides in full:

Clerk of court; fees; investment of funds. (a) The clerk of the circuit court shall collect the fees that are prescribed in ss. 814.60 to 814.63. The clerk may refuse to accept any paper for filing or recording until the fee prescribed in subch. II of ch. 814 or any applicable statute is paid.

(b) Except as provided in par. (c), the clerk may invest any funds that are paid into his or her office and are being held for repayment. The investments shall be made in suitably protected accounts in the manner specified in s. 66.0603(1m) and all income that may accrue shall be paid into the county general fund.

(c) A judge may direct that par. (b) does not apply to certain funds paid into the office. The judge's authority applies only to funds relating to cases before his or her court.

contends is implicit in the meaning of the statute. Majority op., ¶¶ 4, 27–28, 51.

¶ 60. I note that Wis. Stat. § 59.40(3)(c) does *not* provide a judge with the authority to parse the statute in a manner that would allow the circuit court to disregard a portion of paragraph (b). Thus, under the statute in question, once a judge invokes paragraph (c), a clerk's authority to invest the funds held in the condemnation award must be found elsewhere.

¶ 61. This takes us back to Wis. Stat. § 32.05(7)(d), which allows a condemnor to deposit with the clerk of circuit court a check "for the benefit of the persons named in the award." The clerk then gives notice to the parties, who may receive their proper share of the award by petition to and order of the circuit court. *Id.* Nowhere in the statute does the legislature provide the judge with the authority to order the clerk of courts to invest the award in the first instance, much less invest it in a particular account. And nowhere does the statute allow the clerk to keep any interest accrued at the expense of, as opposed to the benefit of, the parties.

¶ 62. Thus, when Wis. Stat. § 59.40(3)(b) is rendered inapplicable by a judge pursuant to § 59.40(3)(c), and those sections are read in conjunction with Wis. Stat. § 32.05(7)(d), which requires condemnation awards to be held for the benefit of the parties, these statutes do not grant the judge the power to order the clerk of court to transfer funds to a private interest-bearing account. Without a clear legislative grant of power, and without any other source of authority identified, such as the inherent powers or equitable authority of the court,[2] the

---

[2] *See, e.g., Flynn v. Dep't of Admin.,* 216 Wis. 2d 521, 548, 576 N.W.2d 245 (1998); *Perpignani v. Vonasek,* 139 Wis. 2d 695, 737, 408 N.W.2d 1 (1987); *Weeden v. City of Beloit,* 29 Wis. 2d 662, 673, 139 N.W.2d 616 (1966); *but c.f.* majority opinion at

majority is simply rewriting the statute in a manner that produces a result it deems to be reasonable.[3]

¶ 63. I concur with the result only because none of the "interested persons" in this case objected to the request for transfer of funds by one of the parties to a private interest-bearing account for the benefit of the parties. Majority op., ¶ 8. It was their money. Whether the circuit court had the authority to order the transfer of funds to an interest-bearing account in the first instance is one thing. That in no way alters the fact that the circuit court in this case *did* order the transfer of funds to an interest-bearing account. Now that that has occurred, something must be done with the interest that was earned during the period of the transfer. Because the circuit court invoked Wis. Stat. § 59.40(3)(c), the clerk of courts lacked the authority under paragraph (b) to pay the income accrued into the county general fund. Pursuant to Wis. Stat. § 32.05(7)(d), the award was to be held for the benefit of the parties. Thus, any interest accrued in this case must, under § 32.05(7)(d), revert to the parties.

¶ 64. I have no quarrel with the public policy advocated in the majority opinion. Nonetheless, it remains the role of the legislature, not the judiciary, to rewrite legislation where necessary to implement positive public policy goals. Accordingly, while I concur with the court's mandate, I decline to join its opinion.

¶ 65. For the foregoing reasons, I respectfully concur.

---

¶ 14 n.7 ("[b]ecause we decide this case on statutory grounds, we do not address the parties' arguments concerning the circuit court's inherent and equitable authority . . .").

[3] Indeed, the result may not only be reasonable, it may be preferable. Nevertheless, that determination is for the legislature, absent some legitimate independent grant of authority.

¶ 66. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this concurring opinion.