¶ 70.
ANN WALSH BRADLEY, J.
{dissenting). In no uncertain terms, the legislature enacted a statute mandating that a judge "shall grant a severance" where statements of one defendant will implicate the other in the crime charged:
The district attorney shall advise thé court prior to trial if the district attorney intends to use the statement of a codefendant which implicates another defendant in the crime charged. Thereupon, the judge shall grant a severance as to any such defendant.
Wis. Stat. § 971.12(3) (emphasis added).
¶ 71. This language is not confusing. It does not suggest multiple meanings that could render it am *337 biguous. Yet, the majority presents no analysis of the actual language of the statute, let alone an analysis that would lead to a conclusion that it is inapplicable.
¶ 72. When faced with the question of whether a trial should be severed when a codefendant's inculpa-tory statement will be introduced, the court's analysis need go no further than Wis. Stat. § 971.12(3). It plainly provides the answer: yes, severance shall be granted.
¶ 73. Instead, of applying the plain language of the statute, the majority embarks on a journey that takes us through unsettled territory, analyzing whether the United States Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004), intended to limit Bruton v. United States, 391 U.S. 123 (1968). Resolution of this case does not require such a complex analytical exercise.
¶ 74. This approach disregards the unambiguous language of the statute, violates a bedrock principle of review that should guide appellate courts and fails to recognize the nuances in Confrontation Clause jurisprudence.
¶ 75. Honoring the language chosen by the legislature, I take an approach at odds with that of the majority. Because I determine, based on the plain meaning of the text, that the circuit court erred in failing to sever the trials and that the error was not harmless, I respectfully dissent.
I
¶ 76. In State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110, this court set forth a framework for statutory interpretation, which has since served to guide our *338 analyses in cases involving statutory interpretation. It instructs that "statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " Id., ¶ 45 (quoting Seider v. O'Connell, 2000 WI 76, 236 Wis. 2d 211, 232, 612 N.W.2d 659).
¶ 77. The court provided strong justification for this rule. Focusing on the different roles of the judiciary and the legislature, it explained that the judiciary has a "solemn obligation... to faithfully give effect to the laws enacted by the legislature . . . ." Id., ¶ 44. Courts are to give deference to the policy choices made by the legislature, and deference "requires that statutory interpretation focus primarily on the language of the statute." Id.
¶ 78. As further justification for focusing on the plain language of the statute, Kalal explained that ultimately, "[i]t is the enacted law, not the unenacted intent, that is binding on the public." Id., ¶ 46.
f 79. Here, the language is unambiguous. Wisconsin Stat. § 971.12(3) mandates that a judge shall grant a severance where statements of one defendant will implicate the other in the crime charged:
The district attorney shall advise the court prior to trial if the district attorney intends to use the statement of a codefendant which implicates another defendant in the crime charged. Thereupon, the judge shall grant a severance as to any such defendant.
Wis. Stat. § 971.12(3) (emphasis added).
¶ 80. Despite the statute's clear answer to the question before us, the majority barely references it. Indeed, its sole reference to Wis. Stat. § 971.12(3) is relegated to a footnote where it asserts that severance is not required where a codefendant's statement does *339 not implicate a defendant — an assertion that is not at issue in this case and against which no one is arguing. Majority op., ¶ 52 n.17.
¶ 81. Nowhere in the majority opinion is the actual language of the statute analyzed. Instead, it bypasses a Kalal analysis entirely. In so doing, the majority fails to give deference to the legislature as required.
II
¶ 82. Not only does the majority fail to defer to the plain language of the statute, it also violates a longstanding principle of appellate court practice by conducting an unnecessary constitutional analysis. This court has repeatedly stated that appellate courts should decide cases on the narrowest grounds possible. Md. Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶ 48, 326 Wis. 2d 300, 786 N.W.2d 15 ("[A]n appellate court should decide cases on the narrowest possible grounds."); Ehlinger v. Hauser, 2010 WI 54, ¶ 66, 325 Wis. 2d 287, 785 N.W.2d 328 ("Typically, an appellate court should decide cases on the narrowest possible grounds."); State v. Castillo, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (same).
¶ 83. Thus, when a question presented can be answered by statute, we typically leave interpretation of federal and state constitutional provisions for another day. See, e.g., State v. Popenhagen, 2008 WI 55, ¶ 5, 309 Wis. 2d 601, 749 N.W.2d 611 ("Because we affirm the circuit court's order on statutory grounds, we leave the interpretation of the federal and state constitutional provisions ... for another case in which these issues are determinative."); HSBC Realty Credit Corp. v. City of Glendale (In re City of Glendale Cmty. *340 Dev. Auth. Condemnation Award), 2007 WI 94, ¶ 14 n.7, 303 Wis. 2d 1, 735 N.W.2d 77 ("Because we decide this case on statutory grounds, we do not address the parties' arguments concerning. . . the constitutional right to interest on a condemnation award."); see also Castillo, 213 Wis. 2d at 492 ("a court will not reach constitutional issues where the resolution of other issues disposes of an appeal.").
f 84. As discussed above, the question before us can be easily addressed by a plain language interpretation of Wis. Stat. § 971.12(3). Therefore, resorting to a complex constitutional analysis is unnecessary.[1] Yet, the majority disregards our well established practice of deciding issues narrowly. Instead, it delves into an analysis of the impact that Crawford had on Bruton. Such an exercise in constitutional analysis is not needed to resolve this case.
III
¶ 85. Not only is a constitutional analysis unnecessary, the one conducted by the majority is also unconvincing. After asserting that Crawford shifted *341 the focus of a Confrontation Clause away from reliability and onto the testimonial nature of statement, it concludes that because Bruton is a by-product of the Confrontation Clause, Crawford's holding necessarily limits Bruton to testimonial statements. Majority op., ¶ 32.
f 86. To support this conclusion, the majority quotes from the lead opinion in State v. Wilcoxon, 373 P.3d 224 (2016), which stated "the scope of the confrontation right encompasses only testimonial statements . . . whether in the context of a single defendant like in Crawford or codefendants like in Bruton." Majority op., ¶ 33. This analysis overlooks the complexities in Confrontation Clause jurisprudence.
¶ 87. More persuasive is the analysis presented in the dissent of State v. Wilcoxon, 373 P.3d 224, 232 (2016) (Madsen, C.J., dissenting). As Chief Justice Madsen observes, Bruton and Crawford address different concerns. Id., ¶¶ 48, 54-55. Where Crawford dealt with the initial admissibility of hearsay (and thus its discussion of reliability), Bruton dealt with the prejudice created by placing inadmissible hearsay before a jury. Id. Crawford did not touch upon prejudice, indeed it did not even mention Bruton. Id., ¶¶ 50, 53. Thus, forcing Bruton through the lens of Crawford is a poor fit. Id., ¶ 56. The majority's attempt to do so misses the nuance in the Supreme Court's Confrontation Clause jurisprudence.
IV
¶ 88. Contrary to the majority, I conclude, as did the court of appeals, that Wis. Stat. § 971.12(3) decides the question before us. When a prosecutor plans to use an inculpatory statement of a co-defendant, "the judge *342 shall grant a severance as to any such defendant." Wis. Stat. § 971.12(3) (emphasis added).
f 89. The only issues remaining after reading this plain statutory language are whether the co-defendant's statements were inculpatory and, if so, whether the circuit court's failure to sever the trials constituted harmless error.
f 90. First, I consider whether the co-defendant's statements were inculpatory. These statements were entered into the record through the testimony of a state's witness at the joint trial. As they illustrate, on multiple occasion the witness used the pronoun "they" when describing the actions Maldonado took with Nieves:
[State]: And did [Mr. Maldonado], in fact, talk about how that happened and what Mr. Maldonado's involvement was with either of these two shorties?
[Witness]: They told them to come party or celebrate to Wisconsin. And they came to Kenosha, and then from Kenosha they came to Milwaukee.
[State]: By "they," you mean Mr. Maldonado and the shorties?
[Witness]: Yes.
[State]: And after leaving Kenosha, they were going to go to Milwaukee, and what happened once they got to Milwaukee according to Mr. Maldonado?
[Witness]: They brought them to a dark alley, if I'm not mistaken, and laid them on the ground. And then when he shot, he shot through the hoody. He thought he killed the victim, but it turned out to be that he played dead on him.
(emphasis added). Although the witness at times used the term "they" to describe the "two shorties," it is *343 obvious that twice the word "they" was used to reference Maldonado and Nieves. When the witness stated "they told them" and "they brought them," it would be illogical to conclude that the "two shorties" were telling and bringing themselves.
¶ 91. The witness later referenced Nieves by name, reinforcing the implication that his prior testimony referred to both Nieves and Maldonado:
[State]: Did he talk about, when he spoke of the period of time they were in Kenosha, where they were at where he was at with the shorties in Kenosha?
[Witness]: I believe Mr. Nieves's mom's house or his baby mamma house.
¶ 92. On cross-examination, the following exchange between the witness and Maldonado's attorney further emphasized that the "they" referred to both Nieves and the co-defendant:
[Attorney]: Okay. You are testifying today that Mr. Maldonado told you that once they brought these other two guys from Waukegan, that they laid on the ground in the alley and then shot them; is that your testimony?
[Witness]: Yes.
(Emphasis added). Given the totality of the witness's testimony, the most reasonable conclusion for the jury to reach was that Maldonado told the witness about how he and Nieves committed the crime. Accordingly, I conclude that these out-of-court statements by Maldonado implicated Nieves in the crime and must be considered inculpatory.
¶ 93. Second, I consider whether admission of these inculpatory statements in violation of Wis. Stat. § 971.12(3) constituted harmless error. Such a deter- *344 urination requires an inquiry into "whether it was beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." State v. Moore, 2015 WI 54, ¶ 94, 363 Wis. 2d 376, 864 N.W.2d 827, (quoting State v. Magett, 2014 WI 67, ¶ 29, 355 Wis. 2d 617, 850 N.W.2d 42). The State bears the burden of proving the error was harmless. State v. Harris, 2008 WI 15, ¶ 113, 307 Wis. 2d 555, 745 N.W.2d 397.
¶ 94. Given the typically damning nature of a co-defendant's inculpatory confession, the State's burden is difficult to meet. As Bruton describes, such statements can be devastating. 391 U.S. at 136; see also Cruz v. New York, 481 U.S. 186, 170 (1987) (referring to the "devastating practical effects" of a co-defendant's inculpatory statements). Even when a jury is properly instructed to disregard such statements, it is unlikely such confessions will be ignored. Bruton, 391 U.S. at 129.
¶ 95. The potency and prejudicial effect in a joint trial of a confession by a non-testifying co-defendant that is admissible against him but inadmissible and incriminating against the other defendant cannot be minimized. Justice Frankfurter warned that the government gets the benefit of the inadmissible testimony influencing the jury "which, as a matter of law, they should not consider but which they cannot put out of their minds." Delli Paoli v. United States, 352 U.S. 232, 248 (1957) (Frankfurter, J., dissenting). Contrary to the majority in Delli, Justice Frankfurter thought that the prejudice could not be cured by a limiting instruction. Id. at 247.
¶ 96. The prophylactic effect of a limiting instruction in similar situations was the focus of later cases. In Richardson v. Marsh, 481 U.S. 200, 211 *345 (1987), the Court held that when a codefendant's confession is redacted to eliminate any reference to the other defendant's existence, then a limiting instruction will suffice.
¶ 97. Subsequently, the Court in Cruz, determined that a limiting instruction was insufficient to cure the harm. It held that where a nontestifying co-defendant's confession incriminating another defendant is not directly admissible against that defendant, then the risk of harm in a joint trial is too great "even if the jury is instructed not to consider it against the defendant. . . ." Id. at 193.
f 98. Here, we need not consider whether the harmful effect of this evidence can be sufficiently ameliorated by a limiting instruction, because no limiting instruction was given. The jury was never told to disregard Maldonado's out-of-court statements implicating Nieves or told that those incriminating statements could not be used against Nieves. Likewise, we need not analyze whether the redactions were sufficient, because there were no redactions.
¶ 99. The State relies on the victim's testimony that Nieves and Maldonado brought him to an alley and shot him. Yet, it is unclear how much weight the jury would have given it. His story had changed several times during his interviews with police. Further, portions of his testimony were inconsistent, giving rise to the likelihood that Maldonado's corroborating statements added critical weight to the witness's testimony and contributed to Nieves' conviction.
¶ 100. Due to the nature of the testimony and the failure of the court to give a limiting curative instruction, I determine that the State fails to meet it burden because it cannot demonstrate beyond a reasonable doubt that the error was harmless.
*346 ¶ 101. In sum, I conclude that the question before us is answered by the plain language of Wis. Stat. § 971.12(3) that mandates severance. Because the circuit court violated that statute and that error was not harmless, I would affirm the court of appeals decision.
¶ 102. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 Resorting to the constitutional analysis is also questionable because such an analysis likely has been forfeited here. As the court of appeals observed, it appears that the State did not raise the Crawford issue before the circuit court and the State "explicitly acknowledged that it had forfeited its argument concerning Crawford by failing to raise it on appeal. . . ." State v. Nieves, No. 2014AP1623-CR, unpublished slip op., ¶ 12 n.6 (Wis. Ct. App. Apr. 5, 2016).
After the State lost in the court of appeals, it raised the issue for the first time on a motion for reconsideration, which it also lost. If the majority is going to now take up and run with the State's new Crawford issue, it should at least acknowledge and address Nieves' argument that this court, like the court of appeals, should consider the issue long since forfeited.